ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2021-May-04 08:43:53
16JCV-21-435
C02D01 : 8 Pages

## IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
### CIVIL DIVISION

**MELISSA BRUNO**                                                    **PLAINTIFF**

**VS.**                          **NO.**_____

**THE PRUDENTIAL INSURANCE COMPANY**
**OF AMERICA and BAPTIST MEMORIAL**
**HEALTH CARE CORPORATION**                          **DEFENDANTS**

### COMPLAINT

Plaintiff, Melissa Bruno, by and through her attorney, Brandon Lacy of Lacy Law Firm, and

for her Complaint against Defendants, The Prudential Insurance Company of America and Baptist

Memorial Health Care Corporation, states as follows:

### PARTIES, JURISDICTION & VENUE

1.      Plaintiff, Melissa Bruno, is a resident of Bono, Craighead County, Arkansas. Plaintiff

is an eligible employee, participant, and beneficiary of the plan of disability benefits at issue in this

lawsuit.

2.      Defendant The Prudential Life Insurance Company of America ("Prudential") is a

foreign corporation with a principal place of business in a state other than Arkansas. Prudential is

the claim administrator for the long term disability plan under which Melissa Bruno is a participant

and a beneficiary. As claim administrator, Prudential had been granted authority by the Plan to

administer, approve, and/or deny claims for disability benefits thereunder. Prudential made the

decision to deny Plaintiff's claim for benefits, which said denial is the subject of this lawsuit.

1

Prudential's registered agent for service of legal process is CT Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

3. Defendant Baptist Memorial Health Care Corporation ("Baptist") is a foreign corporation with its principal place of business in a state other than Arkansas. Baptist was, prior to the onset of her disability, Plaintiff's employer. Baptist sponsored and adopted the Plan that has, by decision of its agent, Prudential, denied Plaintiff's claim for disability benefits. It is, therefore, a proper party to this lawsuit. Baptist's registered agent for services of process is Mr. Gregory M. Duckett, 350 N. Humphreys Boulevard, Memphis, Tennessee 38120-2177.

4. The Defendants have had in the past, and continue to have in the present, continuous and substantial contacts with the State of Arkansas. Defendants have engaged in systematic and continuous activity in Arkansas, thereby purposefully availing themselves of the benefits and protection of the laws of the State of Arkansas. These contacts are sufficient to establish personal jurisdiction within the State of Arkansas.

5. The Defendants entered into a contractual agreement with Plaintiff which was administered by Defendants. These contacts are sufficient to establish personal jurisdiction within the State of Arkansas.

6. Jurisdiction properly lies in this Court based upon the type and amount of relief sought. Venue lies properly in this Court based upon the residence of this Plaintiff and the County in which a substantial part of events or omissions giving rise to the claims occurred.

7. Because the plan was established and maintained for the employees of a church-affiliated organization, the Plan is a "church plan" as that term is defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(33)(C)(i); *see also Advocate Health*

2

*Network v. Stapleton*, 581 U.S. ___ (2017). As such, it is not governed by ERISA.

## GENERAL ALLEGATIONS

8.      Plaintiff was an employee of Baptist as a Quality Improvement Clinical Liason, having worked there from October 3, 2001 until her last day of actual work on September 16, 2019.

9.      As a Quality Improvement Clinical Liason, Plaintiff's job duties require that she lift from the floor to waist level up to 15 pounds occasionally and waist level and above ten pounds occasionally. They require sitting, standing and walking, carrying, pushing/pulling, twisting, bending, reaching, squatting/kneeling/crawling, wrist position deviation, pinching/fine motor activities, and keyboard use/repetitive motion occasionally. The job duties also reasonably anticipate occupational exposure and risk to blood-born pathogens, chemicals, airborne communicable disease, extreme temperatures, radiation, uneven services or elevation, extreme noise levels, and dust/particulate matters. *See* Exhibit 1.

10.     Plaintiff has been treated by a pulmonologist for asthma and associated complications for over seven years. Complications from this condition have led to multiple hospitalizations. Her condition led to a decline in her performance of her occupational duties.

11.     Plaintiff continues to suffer with the above illnesses and continues treatment to date.

12.     Attached as Exhibit 2 is Plaintiff's plan of long term disability insurance in which she participated and paid for while an employee of Baptist.

13.     The Plan defines "Disability" or "Disabled" as meaning:

(a)     you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

(b)     you are under the regular care of a doctor; and

(c)     you have 20% or more loss in your monthly earnings due to that sickness or injury.

3

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

(a)    you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and

(b)    you are under the regular care of a doctor.

14.    Plaintiff originally became eligible for long term disability benefits on December 16, 2019 after satisfying the Plain's 90-day elimination period.

15.    Plaintiff was hospitalized in April 2019 for a respiratory condition, and this led to her treating physicians, both pulmonologist and family care doctor, advising her she needed to apply for disability and refrain from further work. In fact, the office visit note of April 2019 which led to her hospitalization indicated that she could not walk without respiratory distress.

16.    Plaintiff's claim for disability was supported by both her family care doctor and her pulmonologist. In a letter dated October 3, 2019, Dr. W. Scott Hoke, family practice, stated "Her current medical condition is to the point that she can no longer perform the duties of her work." *See* Exhibit 3.

17.    Mr. Sam Hiser, APRN, signed an Attending Physician Statement on October 8, 2019, likewise recommending that she obtain long-term disability as her asthma, shortness of breath, wheezing, cough, and anxiety were causing her to miss more work that attend. The encounter note attached to the Attending Physician Statement signed by Mr. Hiser, APRN stated that "she has reached a point in her disease that she can no longer perform at the required duties of her employer. Her inability to complete her job duties is only making her medical condition worse due to a result in anxiety." *See* Exhibit 4.

18.     Dr. Hoke also completed a Capacity Questionnaire in connection with Mrs. Bruno's claim, signed on November 4, 2019, stating that she was "unable to work due to respiratory failure due to asthma." Dr. Hoke indicated that the expected duration of these restrictions and limitations were "lifelong" and that "no modifications are possible." Dr. Hoke certified that this opinion was based upon objective findings. *See* Exhibit 5.

19.     A January 6, 2020 Medical Source Statement signed by Scott Hoke, M.D. noted that Plaintiff could only lift less than ten pounds frequently or occasionally, and stand/walk for a total of one hour in an eight-hour day (noting that she may be bedridden at times). These restrictions directly conflict with the requirements of her job as listed in the job description in the claim file as set forth above. In addition, Dr. Hoke noted that Mrs. Bruno's Forced Expiratory Volume has declined 21% in the last four years due to asthma. Obviously, the FEV decline constitutes objective clinical evidence, confirmed by diagnostic testing, to support the diagnoses underlying Dr. Hoke's opinions. *See* Exhibit 6.

20.     A letter from Plaintiff's supervisor was submitted to Prudential on January 22, 2020 outlining the decline in Plaintiff's condition and her resulting inability to perform her work duties over the past two years. As explained by Jennifer Martinez, Director-Population Health at NEA Baptist Clinic, accommodations were made by moving Plaintiff's office offsite and allowing her to work from home in order to prevent her exposure to illness given her compromised immune system. Even with these accommodations, Mrs. Bruno's health continued to decline. *See* Exhibit 7.

21.     On January 23, 2020, Dr. Hoke signed a Capacity Questionnaire stating that Plaintiff could not stand, walk, sit, climb stairs, climb ladders, balance, stoop, kneel/crawl, reach at desk level or reach overhead, lift/carry up to 20 pounds, lift/carry up to 50 pounds, and that she could only

occasionally right handle, right finger, right keyboard, left handle, left finger, and left keyboard. Dr. Hoke repeated his prior opinion that she is "unable to work due to respiratory failure due to asthma." *See* Exhibit 8.

22.      Despite the opinions of Plaintiff's own treating providers, Prudential relied upon the opinion of Cheryl McDermott, R.N. who stated that "there is not dx testing or result to correlate with respiratory failure or distress." *See* Exhibit 9.

23.      On February 14, 2020, Prudential denied Plaintiff's claim for benefits. *See* Exhibit 10.

24.      Plaintiff appealed Prudential's decision to deny benefits by letter dated August 12, 2020. *See* Exhibit 11.

25.      Prudential ultimately upheld its denial by letter dated April 29, 2021. *See* Exhibit 12.

## COUNT I
## BREACH OF INSURANCE CONTRACT

26.      Paragraphs 1-25 are incorporated herein by reference as set forth word for word.

27.      Plaintiff is entitled to recovery against Defendants pursuant to the Plan which was in effect at the time of Plaintiff's claim for disability benefits.

28.      Because of Plaintiff's condition, she is unable to work at any occupation. In addition, Plaintiff is under the regular and care of her primary care physician and pulmonologist.

29.      Because Plaintiff is "disabled" as that phrase is defined within this Plan, Plaintiff is entitled to recover benefits from the date her disability (September 17, 2019) until her exhaustion of benefits date of October 19, 2039.

30. The benefits due Plaintiff under this policy exceed the amount required for federal diversity jurisdiction.

31. The failure to tender moneys to their insured pursuant to the disability provisions of the insurance contract is a breach of the contract by Defendants Insurance and entitles Plaintiff to the following:

(a) The monthly benefit the date of the disability until she reaches the age of 67, or October 19, 2039;

(b) 12% penalty pursuant to Ark. Code Ann. § 23-79-208;

(c) Attorneys fees pursuant to Ark. Code Ann. § 23-79-208;

(d) 6% prejudgment interest calculated from the date of notice of Plaintiff's claim; and

(e) All other costs incurred to prosecute this action.

## COUNT II
## COMMON-LAW BAD FAITH (PRUDENTIAL)

32. Paragraphs 1-31 are incorporated herein by reference as set forth word for word.

33. An insurer's disregarding of the insured's overwhelming likelihood of liability has been held to constitute bad faith under Arkansas law. In this instance, Prudential has willfully disregarded the insured's overwhelming likelihood of liability.

34. The Defendants had an obligation to conduct a proper investigation, evaluation, and payment of Plaintiff's claim.

35. The Defendants, in this instance, improperly turned a blind eye to clear evidence indicating that Plaintiff is unable to perform the material and substantial duties of her occupation and

7

is totally disabled according to the terms of the Plan.

36.    Defendant, through its agents and employees, made misleading statements in the consideration, investigation, and denial of Plaintiff's claim.

38.    Thus, the Defendants improperly investigated, evaluated, and denied payment of this claim.

38.    In addition, throughout the claims process in this matter, Defendants willfully, unnecessarily, and improperly delayed the investigation of this claim without justification.

39.    The Defendants' failure to properly investigate, evaluate, or pay this claim constitutes bad faith under Arkansas law and entitles Plaintiff to recover punitive damages in addition to those compensatory damages specified above.

40.    Defendants are jointly and severally liable for the damages to Plaintiff.

41.    Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully prays that he have and recover a judgment against the Defendants for all compensatory and punitive damages more fully described above, including attorneys' fees, expenses, and costs, and for all other just and appropriate relief.

Respectfully submitted,

Brandon W. Lacy #2003098
**LACY LAW FIRM**
630 S. Main Street
Jonesboro, AR 72403
870-277-1144

Attorney for Plaintiff

By: _____
Brandon W. Lacy (2003098)

8



| | |
|---|---|
| Position Title: | **Quality Improvement Clinical Liaison**<br>**BCRI BAPTIST CLINICAL RESEARCH** |
| Creation Date: | Oct 24, 2016 10:56:47am |
| Last Updated: | Oct 25, 2016 03:42:16pm |
| Position Code: | 21210007 Oct 25, 2016 03:42:16pm up to present |
| Department: | BCRI BAPTIST CLINICAL RESEARCH |

Job Summary:  The Quality Improvement Clinical Liaison is an important part of the practice transformation team. This positions is responsible for assisting with the transformation and quality improvement of practices/providers in MS, AR, and TN. A primary focus is to monitor provider performance metrics and work with the practices on opportunities to engage, improve, and adhere to practice transformation models. Performs other duties as assigned.

Require Populations Served tab:  No

## SPECIFICATIONS

| Description | Minimum Required | Preferred / Desired |
|---|---|---|
| **Experience** | Two years' experience in quality improvement or related experience. Experience in organizational development, organizational behavior and culture change | Healthcare industry experience preferred. |
| **Education** | Bachelor's Degree in related field or equivalent combination of education and experience. | Bachelor's Degree in related field |
| **Training** | | |
| **Special Skills** | Knowledge of computers, Microsoft Office applications, clinical trial management and billing systems. Knowledge of medical terminology and procedures. Able to function independently, be self-motivated, well organized and manage time. Able to communicate effectively. Able to maintain confidentiality. | |
| **Licensure** | DRIVER'S LICENSE (CURRENT) | |

**Reporting Relationships**

Does this position formally supervise employees?                        No

*If set to YES, then this position has the authority (delegated) to hire, terminate, discipline, promote or effectively recommend such to manager.*

**WORK ENVIRONMENT**                          **EXHIBIT 1**

**Bruno_Claim File 011**                    1

| Functional Demands | Sedentary |
|---|---|

| Label | Short Description | Full Description |
|---|---|---|
| Sedentary | Very light energy level | Lift 10 lbs. box overhead. Lift and carry 15 lbs. Push/pull 20 lbs. cart. |
| Light | Moderate energy level | Lift and carry 25-35 lbs. Push/pull 50-100 lbs. (ie. empty bed, stretcher) |
| Medium | High energy level | Lift and carry 40-50 lbs. Push/pull +/- 150-200 lbs. (Patients on bed, stretcher) Lateral transfer 150-200 lbs. (ie. Patient) |
| Heavy | Very high energy level | Lift over 50 lbs. Carry 80 lbs. a distance of 30 feet. Push/pull > 200 lbs. (ie. Patients on bed, stretcher) Lateral transfer or max assist sit to stand transfer. |
| Other | ... | ... |

### Activity Level Throughout Workday

| Physical Activity Requirements | Occasional (0-35% of day) | Frequent (36-66% of day) | Continuous (67-100% of day) | Not Applicable |
|---|---|---|---|---|
| Sitting | X | | | |
| Standing | X | | | |
| Walking | X | | | |
| Climbing (e.g., stairs or ladders) | X | | | |
| Lifting - Floor to waist level | 15 lbs. | 0 lbs | 0 lbs. | |
| Lifting - Waist level and above | 10 lbs. | 0 lbs. | 0 lbs. | |
| Carry objects | X | | | |
| Push/Pull | X | | | |
| Twisting | X | | | |
| Bending | X | | | |
| Reaching forward | X | | | |
| Reaching overhead | X | | | |
| Squat/kneel/crawl | X | | | |
| Wrist position deviation | X | | | |
| Pinching/fine motor activities | X | | | |
| Keyboard use/repetitive motion | X | | | |
| Taste or Smell | | | | X |
| Talk or Hear | | | X | |

| Sensory Requirements | Accurate 20/40 | Very Accurate 20/20 | Not Applicable | |
|---|---|---|---|---|
| Near Vision | X | | | |
| Far Vision | X | | | |
| | Yes | No | Not Applicable | |
| Color Discrimination | X | | | |
| | Minimal | Moderate | Accurate | Not Applicable |
| Depth Perception | X | | | |
| Hearing | X | | | |

| Environment Requirements | | | |
|---|---|---|---|
| Occupational Exposure Risk Potential | | Reasonably Anticipated | Not Anticipated |
| Bloodborne Pathogens | | X | |
| Chemical | | X | |
| Airborne Communicable Disease | | X | |
| Extreme Temperatures | | X | |
| Radiation | | X | |
| Uneven Surfaces or Elevations | | X | |
| Extreme Noise Levels | | X | |
| Dust/Particulate Matter | | X | |

Other (List)
Usual workday hours                                         8

**JOB RESPONSIBILITIES**                                    Total Weight 70%

| Job Responsibilities | Weight |
|---|---|
| 1. | Understands and complies with current organizational processes and regulatory guidelines/regulations. | 15.0% |

| Performance Expectations | |
|---|---|
| 1.1 | Obtains an understanding of current processes, policies and procedures and applicable industry standards and regulatory requirements that impact areas under review. |
| 1.2 | Develops policies and procedures relating to quality improvement. |
| 1.3 | Complies with the organizational policy and procedures and regulatory guidelines/regulations. |

| Job Responsibilities | Weight |
|---|---|
| 2. | Performs Quality Improvement Assessments and data collection. | 15.0% |

| Performance Expectations | |
|---|---|
| 2.1 | Administers pre-assessment surveys. |
| 2.2 | Conducts face-to-face assessments. |
| 2.3 | Assists with data collection. |

| Job Responsibilities | Weight |
|---|---|
| 3. | Facilitates provider agreements and assists providers with establishing quality improvement activities. | 15.0% |

| Performance Expectations | |
|---|---|
| 3.1 | Identifies clinic champions. |
| 3.2 | Obtains provider agreements. |
| 3.3 | Assists providers/practices in establishing quality improvement activities. |
| 3.4 | Monitors provider performance metrics and works with practices on opportunities to engage, improve, and adhere to practice transformation models. |
| 3.5 | Builds community engagement by working with local stakeholders, patients, clinic liaisons and champions to improve healthcare delivery and patient satisfaction. |

| Job Responsibilities | Weight |
|---|---|
| 4. | Effectively communicates with providers and facilitates appropriate training. | 15.0% |

| Performance Expectations | |
|---|---|
| 4.1 | Provides appropriate and required training. |
| 4.2 | Reinforces training and work at the practice level. |
| 4.3 | Attends training as established |
| 4.4 | Works closely with the area coordinators in building relationships in the designated areas. |

| Job Responsibilities | Weight |
|---|---|
| 5. | Completes assigned goals. | 10.0% |

| Performance Expectations | |
|---|---|
| 5.1 | Achieves all requirements for assigned goals. |

**Bruno_Claim File 013**                                    3

| 5.2 | Completes all assigned goals within designated timeframes |
|---|---|

**BAPTIST VALUES**                                                                              Total Weight 30%

| Job Responsibilities | Weight |
|---|---|
| 1. | Friendly, Compassionate and Responsive Care as Reflected in our Service First Philosophy. | 7.50% |

| Performance Expectations | |
|---|---|
| 1.1 | Focuses on the customer; identifies the customer's needs; responds to the customer; satisfies the customer; takes ownership. |
| 1.2 | Demonstrates the "Baptist Basics" and ten "Moments of Truth" with customers. |
| 1.3 | Exemplifies the professional image of Baptist through compliance with the appearance standards. |
| 1.4 | Demonstrates compassion when dealing with customers. |
| 1.5 | Demonstrates enthusiasm and positive attitude with customers. |
| 1.6 | Responds immediately to customer's needs and solving repetitive service problems. |

| Job Responsibilities | Weight |
|---|---|
| 2. | Respect for the Individual and the Value of Diversity. | 7.50% |

| Performance Expectations | |
|---|---|
| 2.1 | Demonstrates respect for differences in others. |
| 2.2 | Maintains high standards of courtesy and respect in dealing with Baptist colleagues. |
| 2.3 | Maintains the confidentiality and confidence of others. |
| 2.4 | Seeks first to understand then to be understood. |
| 2.5 | Respects the opinions and feelings of others. |
| 2.6 | Respects the privacy of customers and provides resources to protect customer dignity (gowns, etc.) |
| 2.7 | Respects the differences of sex, age, race, culture, background, religions, beliefs, handicap, or disability through interpersonal communication and in relation to healthcare issues. |
| 2.8 | Treats others as they would like to be treated. |

| Job Responsibilities | Weight |
|---|---|
| 3. | Trust and Teamwork | 7.50% |

| Performance Expectations | |
|---|---|
| 3.1 | Serves as a resource to other team members in areas of personal strengths/skills. |
| 3.2 | Willingly collaborates and cooperates with others for the best possible outcomes. |
| 3.3 | Demonstrates honesty and truthfulness with all customers and Baptist colleagues. |
| 3.4 | Demonstrates flexibility to help others obtain goals. |
| 3.5 | Demonstrates trusts the competency of team members. |
| 3.6 | Accepts delegated tasks and responsibilities willingly. |
| 3.7 | Seeks/accepts opportunities to help others ("it's not your or my job--it's our job"). |
| 3.8 | Assists in integrating new staff into work groups through mentoring and coaching. |

| Job Responsibilities | Weight |
|---|---|
| 4. | Continuous Improvement | 7.50% |

| Performance Expectations | |
|---|---|

**Bruno_Claim File 014**                                                                                      4

| 4.1 | Understands Baptist's Performance Improvement methodology of Plan, Do, Study and Act. |
| 4.2 | Practices self-directed behavior, i.e. performs and continuously improves performance of job responsibilities with limited supervision and direction. |
| 4.3 | Identifies barriers to job efficiency/effectiveness and takes action to remove them. |
| 4.4 | Takes action as soon as problem is discovered. |
| 4.5 | Improves cleanliness of the workplace. |
| 4.6 | Asks for and accepts customer and colleague feedback as an opportunity to grow and improve. |
| 4.7 | Accepts responsibility for personal development and success. |
| 4.8 | Works effectively with inter/intra-departmental colleagues to achieve quality results. |
| 4.9 | Participates in continuing education/learning activities and demonstrates initiative in keeping up-to date with relevant professional developments. |

-- End --

# Baptist Memorial Health Care Corporation

## *Employees with 5 or more Years of Service*

**Long Term Disability Coverage**

**EXHIBIT 2**

 **Prudential**

**Bruno_Claim File 052**

# Disclosure Notice

## FOR ARKANSAS RESIDENTS

Prudential's Customer Service Office:

> The Prudential Insurance Company of America
> Disability Management Services Claim Division
> P.O. Box 13480
> Philadelphia, Pennsylvania 19176
> 1-800-842-1718

If Prudential fails to provide you with reasonable and adequate service, you may contact

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
1-800-852-5494

## FOR ARIZONA RESIDENTS

**Notice:  This certificate of insurance may not provide all benefits and protections provided by law in Arizona.  Please read this certificate carefully.**

## FOR COLORADO RESIDENTS

**THIS IS A SUPPLEMENTAL PLAN THAT IS NOT INTENDED TO PROVIDE THE MINIMUM ESSENTIAL COVERAGE REQUIRED BY THE AFFORDABLE CARE ACT (ACA).  UNLESS YOU HAVE ANOTHER PLAN (SUCH AS MAJOR MEDICAL COVERAGE) THAT PROVIDES MINIMUM ESSENTIAL COVERAGE IN ACCORDANCE WITH THE ACA, YOU MAY BE SUBJECT TO A FEDERAL TAX PENALTY. ALSO, THE BENEFITS PROVIDED BY THIS PLAN CANNOT BE COORDINATED WITH THE BENEFITS PROVIDED BY OTHER COVERAGE. PLEASE REVIEW THE BENEFITS PROVIDED BY THIS PLAN CAREFULLY TO AVOID DUPLICATION OF COVERAGE.**

## FOR FLORIDA RESIDENTS

The benefits of the policy providing your coverage are governed by the law of a state other than Florida.

**Bruno_Claim File 053**

## FOR IDAHO RESIDENTS

If you need the assistance of the governmental agency that regulates the business of insurance, you can contact the Idaho Department of Insurance by contacting:

Idaho Department of Insurance
Consumer Affairs
700 W State Street, 3rd Floor
PO Box 83720
Boise ID 83720-0043

1-800-721-3272 or 208-334-4250 or www.DOI.Idaho.gov

## FOR INDIANA RESIDENTS

**Questions regarding your policy or coverage should be directed to:**

**The Prudential Insurance Company of America
(800) 842-1718**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or e-mail:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

## FOR MARYLAND RESIDENTS

**The Group Insurance Contract providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

## FOR NORTH CAROLINA RESIDENTS

**Notice:  This Certificate of Insurance provides all of the benefits mandated by the North Carolina Insurance Code, but is issued under a group master policy located in another state and may be governed by that state's laws.**

## FOR OKLAHOMA RESIDENTS

**Notice:  Certificates issued for delivery in Oklahoma are governed by the certificate and Oklahoma laws not the state where the master policy was issued.**

**Bruno_Claim File 054**

FOR TEXAS RESIDENTS

**THE INSURANCE POLICY UNDER WHICH THIS CERTIFICATE IS ISSUED IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. YOU SHOULD CONSULT YOUR EMPLOYER TO DETERMINE WHETHER YOUR EMPLOYER IS A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM.**

FOR WISCONSIN RESIDENTS

KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**Problems with Your Insurance? – If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.**

## Prudential's Customer Service Office:

**The Prudential Insurance Company of America**
**Disability Management Services Claim Division**
**P.O. Box 13480**
**Philadelphia, PA  19176**
**1-800-842-1718**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint.  You can file a complaint electronically with the **OFFICE OF THE COMMISSIONER OF INSURANCE** at its website at *http://oci.wi.gov/*, or by contacting:

Office of the Commissioner of Insurance
Complaints Department
P.O. Box 7873
Madison, WI 53707-7873
1-800-236-8517
608-266-0103

**Bruno_Claim File 055**

## THIS NOTICE IS FOR TEXAS RESIDENTS ONLY

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint | Para obtener información o para someter una queja. |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Puede escribir al Departamento de Seguros de Texas: |
| P.O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 490-1007 | P.O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 490-1007 |
| Web: http://www.tdi.texas.gov | Web: http://www.tdi.texas.gov |
| Email: consumerprotection@tdi.texas.gov | Email: consumerprotection@tdi.texas.gov |

| **PREMIUM OR CLAIM DISPUTES:** | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** |
|---|---|
| Should you have a dispute concerning your premium or about a claim you should contact Prudential first  If the dispute is not resolved, you may contact the Texas Department of Insurance | Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con Prudential primero. Si no se resuelve a disputa, puede entonces comunicarse con el departamento (TDI). |

| **ATTACH THIS NOTICE TO YOUR POLICY:** | **UNA ESTE AVISO A SU POLIZA:** |
|---|---|
| This notice is for information only and does not become a part or condition of the attached document. | Este aviso es sólo para propósito de información y no se convierte en parte o condición del documento adjunto. |

83500
TXN 1005

(S-1)

**Bruno_Claim File 056**

# Benefit Highlights

### LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | January 1, 2019 |
| **Contract Holder:** | BAPTIST MEMORIAL HEALTH CARE CORPORATION |
| **Group Contract Number:** | G-52957-TN |
| **Covered Classes:** | All active Employees with five or more years of service, other than Directors in Shelby County, TN and DeSoto County, MS, Executives, Radiology Residents and Employees of Mississippi Baptist. |
| **Minimum Hours Requirement:** | Full-time Employees must be working at least 64 hours every two weeks. Part-time Employees must be working at least 48 hours every two weeks. |
| **Employment Waiting Period:** | You may need to work for your Employer for a continuous period before you become eligible for the plan. The period must be agreed upon by your Employer and Prudential. |
| | Your Employer will let you know about this waiting period. |
| **Elimination Period:** | The longer of 90 days and the length of time for which you receive loss of time benefits, salary continuation or accumulated sick leave. |
| | **Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | Your monthly benefit depends on the Option for which you are enrolled. You are automatically enrolled for Option 1 unless you choose to enroll for Option 2 |
| | Option 1: 50% of your monthly earnings, but not more than the Maximum Monthly Benefit. |
| | Option 2: 60% of your monthly earnings, but not more than the Maximum Monthly Benefit. |
| | Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may be limited under this coverage |
| **Maximum Monthly Benefit:** | $10,000.00. |

Bruno_Claim File 057

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**   Your cost of coverage depends on the Option for which you are enrolled. You are automatically enrolled for Option 1 unless you choose to enroll for Option 2.

Option 1:  The long term disability plan is provided to you on a non-contributory basis.  The entire cost of your coverage under the plan is being paid by your Employer.

Option 2:  The long term disability plan is provided to you on a contributory basis.  You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**

## IMPORTANT INFORMATION FOR RESIDENTS OF CERTAIN STATES: There
are state-specific requirements that may change the provisions under the coverage(s) described in this Group Insurance Certificate.  If you live in a state that has such requirements, those requirements will apply to your coverage(s) and are made a part of your Group Insurance Certificate  Prudential has a website that describes these state-specific requirements.  You may access the website at www.prudential com/etonline.  When you access the website, you will be asked to enter your state of residence and your Access Code.  **Your Access Code is 52957.**

If you are unable to access this website, want to receive a printed copy of these requirements or have any questions, call Prudential at 1-866-439-9026.

Bruno_Claim File 058

# Table of Contents

BENEFIT HIGHLIGHTS - LONG TERM DISABILITY PLAN ...................................................1

CERTIFICATE OF COVERAGE ...................................................................................4

GENERAL PROVISIONS.............................................................................................5

LONG TERM DISABILITY COVERAGE - BENEFIT INFORMATION ....................................10

LONG TERM DISABILITY COVERAGE – OTHER BENEFIT FEATURES................................23

LONG TERM DISABILITY COVERAGE – OTHER SERVICES ...........................................24

LONG TERM DISABILITY COVERAGE – REHABILITATION SERVICES ..............................25

LONG TERM DISABILITY COVERAGE - CLAIM INFORMATION ......................................29

GLOSSARY.............................................................................................................32

83500
CTC-1001

(52957-11)

**Bruno_Claim File 059**

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential s c aims pay ng office Prudential will assist you in any way to help you understand your benefits

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

## Prudential's Address

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

## Customer Service Office

The Prudential Insurance Company of America
Disability Management Services Claim Division
P.O Box 13480
Philadelphia, Pennsylvania 19176
1-800-842-1718

Bruno_Claim File 060

# General Provisions

### What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;
- to whom Prudential will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

### General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in *active employment* with the *Employer* for the minimum hours requirement.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. Full-time Employees must be working at least 64 hours every two weeks. Part-time Employees must be working at least 48 hours every two weeks. If you are a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

Your worksite must be:

- your Employer's usual place of business;
- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Employer* means the *Contract Holder*, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Contract Holder* means the Employer to whom the Group Contract is issued.

*Insured* means any person covered under a coverage

Bruno_Claim File 061

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a *covered class*, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your *employment waiting period*.

You do not have to complete a new employment waiting period if:

- your insurance ends because you stop working for your Employer for any reason; and

- you resume working for your Employer in a covered class within 6 months after your insurance ended.

*Covered class* means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance on each basis, Contributory or Non-contributory insurance, under a plan. "Class" means covered class, benefit class or anything related to work, such as position or earnings, which affects the insurance available. If you are an employee of more than one Employer included under the Group Contract, for the insurance you will be considered an employee of only one of those Employers. Your service with the others will be treated as service with that one

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan. The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the later of:

- the date you are eligible for coverage; and

- the date you are in active employment. If you are not in active employment on the date your coverage would normally begin, it will begin on the date you return to active employment.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you enroll for it on or before that date;

- the date you enroll for coverage, if you enroll for it within 31 days after the date you are eligible for coverage;

- the date Prudential approves your application, if *evidence of insurability* is required; or

83500
CGP-1014

6

(52957-11)

**Bruno_Claim File 062**

- the date you are in active employment. If you are not in active employment on the date your coverage would normally begin, It will begin on the date you return to active employment.

The Contract Holder may not waive an evidence of insurability requirement for any reason.

***Evidence of Insurability*** means a statement of your medical history which Prudential will use to determine If you are approved for coverage.

## When Is Evidence of Insurability Required?

In any of these situations, you must give evidence of insurability, provided at your expense. This requirement will be met when Prudential decides the evidence Is satisfactory.

- When you and your Employer share the cost of your coverage under a plan, you enroll for coverage more than 31 days after the date you are eligible for it.

- You re-enroll for coverage after you voluntarily cancelled it.

- You enroll after any coverage ends because you did not pay a required contribution.

- You have not met a previous evidence requirement to become covered under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

## How Do You Enroll For Coverage?

You must enroll on a form approved by Prudential and agree to pay the required contributions.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect on the latest of

1  the effective date of the change, if you are:

- in active employment;

- on a temporary layoff;

- on leave of absence; or

- working ***reduced hours***, for reasons other than disability.

2.  the date Prudential approves your application, if evidence of Insurability is required, or

3.  the date you return to active employment, If you are not in active employment due to injury or sickness.

Bruno_Claim File 063

An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Reduced hours* means you are working less than the number of hours required to be considered in active employment.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working Or If You Are Working Reduced Hours?

If you are on a *temporary layoff*, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins. But, with respect to leave of absence under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, if it is your employer's policy to allow a longer period of continued coverage for FMLA leaves, this policy will be used to determine the period of continued coverage for your FMLA leave. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working reduced hours, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Temporary layoff* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

*Leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time or any period of disability is not considered a leave of absence.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions;

- the last day you are in active employment except as provided under the Once Your Coverage Begins, What Happens If You Are Temporarily Not Working Or If You Are Working Reduced Hours? section; or

83500
CGP-1014

(52957-11)

**Bruno_Claim File 064**

- the date you are no longer in active employment due to a disability that is not covered under the plan. The disabilities that are not covered are shown in the What Disabilities Are Not Covered Under Your Plan? section of the Long Term Disability Coverage Benefit Information pages.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

83500
CGP-1014

9

(52957-11)

Bruno_Claim File 065

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you are under the *regular care* of a *doctor*; and

- you have a 20% or more loss in your *monthly earnings* due to that sickness or injury

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and

- doctors, other medical practitioners or vocational experts of our choice

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation, and

- cannot be reasonably omitted or modified.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Bruno_Claim File 066**

*Sickness* means any disorder of your body or mind, but not an injury.  Sickness includes pregnancy, abortion, miscarriage, childbirth, and any complication related to pregnancy Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that:

- is the direct result of an accident;

- is not related to any cause other than the accident; and

- results in immediate disability.

Disability must begin while you are covered under the plan.

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means a person who is performing tasks that are within the limits of his or her medical license, and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients, or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Monthly earnings* means your gross monthly income from your Employer in effect just prior to your date of disability.  It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 80% of your *indexed monthly earnings*, if you are working; or

- 50% of your monthly earnings, if you are not working.

**Bruno_Claim File 067**

But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 80% of your indexed monthly earnings, if you are working; or

- 60% of your monthly earnings, if you are not working.

**Indexed monthly earnings** means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your **elimination period**. Prudential will treat your disability as continuous if your disability stops for 30 consecutive days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is the longer of 90 days and the length of time for which you receive loss of time benefits, salary continuation or accumulated sick leave.

**Elimination period** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential. If you become covered under a group long term disability plan that replaces this plan during your elimination period, your elimination period under this plan will not be met.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met   We will send you a payment each month for any period for which Prudential is liable.

83500
CBI-LTD-1159

(52957-11)

**Bruno_Claim File 068**

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1.  If you are enrolled for Option 1, multiply your monthly earnings by 50%.    But, if you are enrolled for Option 2, multiply your monthly earnings by 60%.

2.  The *maximum monthly benefit* is $10,000.00.

3.  Compare the answer in item 1 with the maximum monthly benefit.  The lesser of these two amounts is your *gross disability payment*.

4.  Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your monthly payment

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Maximum monthly benefit* means the maximum benefit amount for which you are insured under this plan.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled.  This income will be subtracted from your gross disability payment.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows

During the first 24 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1.  Add your monthly disability earnings to your gross disability payment.

2.  Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

Bruno_Claim File 069

After 24 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1.   Subtract your disability earnings from your indexed monthly earnings.

2.   Divide the answer in item 1 by your indexed monthly earnings.  This is your percentage of lost earnings.

3.   Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

If your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible   This would be, based on your restrictions and limitations:

•   During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

•   Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings

We will not pay you for any month during which disability earnings exceed the above amounts.

**Bruno_Claim File 070**

### What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1.  The amount that you receive or are entitled to receive as loss of time benefits under:

    (a)  a workers' compensation law;

    (b)  an occupational disease law; or

    (c)  any other *act* or *law* with similar intent

2.  The amount that you receive or are entitled to receive as loss of time disability income payments under any:

    (a)  state compulsory benefit *act* or *law*.

    (b)  automobile liability insurance policy required by *law*.

    (c)  insurance or a health or welfare plan or other group insurance plan where the Employer, directly or indirectly, has paid all or part of the cost or made payroll deductions.

    (d)  governmental retirement system as the result of your job with your Employer

    Amounts you receive or are entitled to receive under any blanket group or franchise school accident policy will not be included.

3.  The gross amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

    (a)  the United States Social Security Act.

    (b)  the Railroad Retirement Act

    (c)  the Canada Pension Plan;

    (d)  the Quebec Pension Plan; or

    (e)  any similar *plan* or *act*.

    Amounts paid to your former spouse or to your children living with such spouse will not be included.

4.  The gross amount that you receive as retirement payments or the gross amount your spouse and children receive as retirement payments because you are receiving payments under:

    (a)  the United States Social Security Act;

    (b)  the Railroad Retirement Act;

    (c)  the Canada Pension Plan,

    (d)  the Quebec Pension Plan; or

83500
CBI-LTD-1159

(52957-11)

**Bruno_Claim File 071**

(e)  any similar *plan* or *act*.

Benefits paid to your former spouse or to your children living with such spouse will not be included

5.  The amount that you:

(a)  receive as disability payments under your Employer's *retirement plan*;

(b)  voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

(c)  receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan.  Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan.  Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6.  The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

7.  The amount of loss of time benefits that you receive or are entitled to receive under any *salary continuation or accumulated sick leave* to the extent that your monthly payment and deductible sources of income, including any other group disability benefits, exceed or would exceed 100% of your monthly earnings.

8.  The amount that you receive from a partnership, proprietorship or any similar draws.

9.  The amount that you receive or are entitled to receive under any unemployment income *act* or *law* due to the end of employment with your Employer.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security retirement payments if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan.  These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions

83500
CBI-LTD-1159

(52957-11)

Bruno_Claim File 072

***Salary continuation or accumulated sick leave*** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Group Contract. This continued payment must be part of an established plan maintained by your Employer for the benefit of an employee covered under the Group Contract. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account as such, in calculating your monthly payment.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;
- profit sharing plans;
- thrift plans;
- tax sheltered annuities;
- stock ownership plans;
- non-qualified plans of deferred compensation;
- pension plans for partners;
- military pension and disability income plans;
- credit disability insurance;
- franchise disability income plans;
- a retirement plan from another Employer;
- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is the greater of (a) 10% of the gross disability payment otherwise payable and (b) $100.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive a Cost of Living Increase from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment due to a cost of living increase from that source

83500
CBI-LTD-1159

(52957-11)

**Bruno_Claim File 073**

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2, or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2, or 3 in the deductible sources of income section if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof.

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If we determine that you may qualify for benefits under item 7 or 9 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been received.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount received; or

- that benefits have been denied. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment is:

| Your Age on Date Disability  Begins | Your Maximum Period of Benefits |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |

83500
CBI-LTD-1159

(52957-11)

Bruno_Claim File 074

| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

We will stop sending you payments while you are incarcerated as a result of a conviction.

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a ***part-time basis*** but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

7. The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by an independent doctor.

***Maximum period of payment*** means the longest period of time Prudential will make payments to you for any one period of disability.

***Part-time basis*** means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on ***self-reported symptoms*** have a limited pay period during your lifetime

Disabilities which, as determined by Prudential, are due in whole or part to ***mental illness*** also have a limited pay period during your lifetime

The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

**Bruno_Claim File 075**

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1.  If you are **confined** to a **hospital or institution** at the end of the 24 month period, Prudential will continue to send you payments during your **confinement**.

    If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.  In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

*   stroke;

*   trauma;

*   viral infection;

*   Alzheimer's disease; or

*   other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Self-reported symptoms** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Confined or confinement** for this section means a hospital stay of at least 8 hours per day

**Hospital or institution** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**Bruno_Claim File 076**

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your

- intentonally self-inflicted injuries;
- active participation in a riot; or
- commission of a crime for which you have been convicted under state or federal law.

Your plan does not cover a disability due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if both 1. and 2. are true:

1. You received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

2. Your disability begins within 12 months of the date your coverage under the plan becomes effective

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase. The increase will not take effect until your disability ends.

## How Do the Pre-Existing Condition Provisions Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and
- you became covered under this plan within thirty-one days of its effective date

The special rules are:

1. If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2. If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

83500
CBI-LTD-1159

2ʼ

(52957-11)

**Bruno_Claim File 077**

3.   If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change. This applies whether or not the Employer's prior plan had a pre-existing condition exclusion or limitation.

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a ***recurrent disability***, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under this plan for the period between your prior claim and your current disability; and

- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim   The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

***Recurrent disability*** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

Bruno_Claim File 078

# Long Term Disability Coverage

### OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die?
### (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your **eligible survivor** a survivor benefit equal to 3 months of your gross disability payment.

The survivor benefit will be paid if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If a benefit is payable to a person who is a minor or not capable of giving a valid release for any payment due, Prudential may, at its option, pay the amount payable to that person or to any person or institution that appears to Prudential to have assumed the custody and main support of that person.  If any amount is so paid, Prudential will not have to pay that amount again.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

**Eligible survivor** means your spouse, if living, otherwise, your children under age 25.

Bruno_Claim File 079

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1000; or
- the equivalent of two months of your gross disability payment.

This benefit is available to you on a one time only basis.

### How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;
- you to protect your retirement benefits; and
- your family to be eligible for Social Security benefits

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation,
- obtaining medical and vocational evidence; and
- reimbursing pre-approved case management expenses.

Bruno_Claim File 080

# Long Term Disability Coverage

### REHABILITATION SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a *rehabilitation program* available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program   If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation, or

- assistance with relocation that may be part of an approved rehabilitation program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit

*Rehabilitation program* means a program designed to assist you to return to work

### What Additional Benefits Are Payable When You Participate in a Rehabilitation Program ?

Prudential will send you a rehabilitation payment each month up to the *maximum period of rehabilitation payment* while you are:

- receiving long term disability benefits under the plan, and

83500
CRS-LTD-1001

(52957-11)

Bruno_Claim File 081

- participating in a rehabilitation program that has been approved by Prudential.

Your maximum period of rehabilitation payment is 12 months.

The monthly rehabilitation payment is equal to 10% of your monthly payment. But the monthly rehabilitation payment, together with your monthly payment, will not exceed the maximum monthly benefit.

***Maximum period of rehabilitation payment*** means the longest period of time Prudential will make rehabilitation payments to you for any one period of disability.

## How Can Prudential Help You With Day Care?

Prudential will send you a day care payment each month up to the ***maximum period of day care payment*** while you are:

- receiving long term disability benefits under the plan; and

- participating in a rehabilitation program that has been approved by Prudential

Your maximum period of day care payment is 12 months

The monthly day care payment is equal to the amount of your ***eligible day care expenses*** up to the maximum monthly day care amount.

Your maximum monthly day care amount is equal to $500 times the number of ***eligible children.***

***Maximum period of day care payment*** means the longest period of time Prudential will make day care payments to you for any one period of disability.

***Eligible day care expenses*** are the monthly expenses you incur for the day care of your eligible children that are:

- charged by a child-care provider who is not a member of your immediate family (i e , you, your spouse, or a child, brother, sister or parent of you or your spouse),

- documented by receipts from the child-care provider which include the child-care provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

***Eligible children*** means your children age 12 or under who live with you  Your children include your legally adopted children, and each of your stepchildren and foster children

## How Can Prudential Help You With Spouse and Elder Care?

Prudential will send you a spouse and elder care payment each month up to the ***maximum period of spouse and elder care payment*** while you are

- receiving long term disability benefits under the plan; and

- participating in a rehabilitation program that has been approved by Prudential.

83500
CRS-LTD-1001

(52957-11)

Bruno_Claim File 082

Your maximum period of spouse and elder care payment is 12 months.

The monthly spouse and elder care payment is equal to the amount of your *eligible spouse and elder care expenses* up to the maximum monthly spouse and elder care amount

Your maximum monthly spouse and elder care amount is equal to $500 times the number of *eligible family members*.

*Maximum period of spouse and elder care payment* means the longest period of time Prudential will make spouse and elder care payments to you for any one period of disability

*Eligible spouse and elder care expenses* are the monthly expenses you incur for the care of your eligible family members that are:

- charged by a licensed adult care provider who is not a member of your immediate family (i e , you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the licensed adult care provider which include the provider s social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

*Eligible family members* means each of the following family members who has a *chronic illness or disability*.

- your spouse;

- your parents and grandparents who live with you; and

- your spouse's parents and grandparents who live with you.

*Chronic illness or disability* means one in which there is:

- a loss of the ability to perform, without *substantial assistance*, at least two *activities of daily living* for a period of at least 30 consecutive days; or

- a severe *cognitive impairment*, which requires *substantial supervision* to protect the family member from threats to health and safety, for a period of at least 30 consecutive days.

*Substantial assistance* means:

- the physical assistance of another person without which the family member would not be able to perform an activity of daily living; or

- the constant presence of another person within arm's reach which is necessary to prevent, by physical intervention, injury to the family member while the family member is performing an activity of daily living

*Activities of daily living* means:

- Bathing - washing oneself by sponge bath, or in either a tub or shower, including the task of getting into or out of the tub or shower;

83500
CRS-LTD-1001

(52957-11)

**Bruno_Claim File 083**

- Continence - the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag);

- Dressing - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs;

- Eating - feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by feeding tube or intravenously;

- Toileting - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene;

- Transferring - sufficient mobility to move into or out of a bed, chair or wheelchair or to move from place to place, either by walking, using a wheelchair or by other means

*Cognitive Impairment* means a loss or deterioration in intellectual capacity that is:

- comparable to and includes Alzheimer's disease and similar forms of irreversible dementia; and

- measured by clinical evidence and standardized tests that reliably measure impairment in the individual's short-term or long-term memory, orientation as to person, place or time; and deductive or abstract reasoning

*Substantial supervision* means continual oversight that may include cueing by verbal prompting, gestures, or other demonstrations by another person, and which is necessary to protect the family member from threats to the family member's health or safety.

83500
CRS-LTD-1001

(52957-11)

Bruno_Claim File 084

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

- That you are under the *regular care* of a *doctor*.

- Appropriate documentation of your monthly earnings

- The date your disability began

- Appropriate documentation of the disabling disorder.

- The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or any gainful occupation.

- The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

- The name and address of any doctor you have seen.

For your Long Term Disability claim, we may request that you send proof of continuing disability satisfactory to Prudential, indicating that you are under the regular care of a doctor. In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information (e.g., copies of your IRS federal income tax

83500
CCLM-1002

(52957-11)

Bruno_Claim File 085

return, W-2's and 1099's) as part of your proof of claim, or proof of continuing disability. This proof, provided at your expense, must be received within 30 days of a request by us. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery. or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Hospital or institution*** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim, and

- your receipt of deductible sources of income

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

83500
CCLM-1002

(52957-11)

**Bruno_Claim File 086**

### What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

### How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud

83500
CCLM-1002

(52957-11)

**Bruno_Claim File 087**

# Glossary

**Active employment** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. Full-time Employees must be working at least 64 hours every two weeks. Part-time Employees must be working at least 48 hours every two weeks. If you are a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

**Activities of daily living** means:

- Bathing - washing oneself by sponge bath, or in either a tub or shower, including the task of getting into or out of the tub or shower,

- Continence - the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag)

- Dressing - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs;

- Eating - feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by feeding tube or intravenously;

- Toileting - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene;

- Transferring - sufficient mobility to move into or out of a bed, chair or wheelchair or to move from place to place, either by walking, using a wheelchair or by other means.

**Chronic illness or disability** means one in which there is:

- a loss of the ability to perform, without substantial assistance, at least two activities of daily living for a period of at least 30 consecutive days; or

- a severe cognitive impairment, which requires substantial supervision to protect the family member from threats to health and safety, for a period of at least 30 consecutive days.

83500
CGL-1010

(52957-11)

Bruno_Claim File 088

**Cognitive impairment** means a loss or deterioration in intellectual capacity that is:

- comparable to and includes Alzheimer's disease and similar forms of irreversible dementia; and

- measured by clinical evidence and standardized tests that reliably measure impairment in the individual's short-term or long-term memory, orientation as to person, place or time; and deductive or abstract reasoning.

**Confined or confinement** for this section means a hospital stay of at least 8 hours per day.

**Contract holder** means the Employer to whom the Group Contract is issued.

**Covered class** means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance on each basis, Contributory or Non-contributory Insurance, under a plan. "Class" means covered class, benefit class or anything related to work, such as position or earnings, which affects the insurance available. If you are an employee of more than one Employer included under the Group Contract, for the insurance you will be considered an employee of only one of those Employers. Your service with the others will be treated as service with that one.

**Deductible sources of income** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

**Disability earnings** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed

**Doctor** means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us

**Eligible children (Day Care)** means your children age 12 years or under who live with you. Your children include your legally adopted children, and each of your stepchildren and foster children.

**Eligible day care expenses** are the monthly expenses you incur for the day care of your eligible children that are:

- charged by a child-care provider who is not a member of your immediate family (i.e., you, your spouse, or a child, brother, sister or parent of you or your spouse);

83500
CGL-1010

(52957-11)

Bruno_Claim File 089

- documented by receipts from the child-care provider which include the child-care provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

***Eligible family members*** means each of the following family members who has a chronic illness or disability:

- your spouse;

- your parents and grandparents who live with you; and

- your spouse's parents and grandparents who live with you.

***Eligible spouse and elder care expenses*** are the monthly expenses you incur for the care of your eligible family members that are:

- charged by a licensed adult care provider who is not a member of your immediate family (i.e , you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the licensed adult care provider which include the provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

***Eligible survivor*** means your spouse, if living; otherwise  your children under age 25

***Elimination period (LTD)*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.  If you become covered under a group long term disability plan that replaces this plan during your elimination period, your elimination period under this plan will not be met

***Employee*** means a person who is in active employment with the Employer for the minimum hours requirement.

***Employer*** means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

***Employment waiting period*** means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan   The period must be agreed upon by the Employer and Prudential.

***Evidence of insurability*** means a statement of your medical history which Prudential will use to determine if you are approved for coverage.

***Gainful occupation*** means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 80% of your indexed monthly earnings, if you are working, or

- 50% of your monthly earnings, if you are not working.

83500
CGL-1010

(52957-11)

**Bruno_Claim File 090**

But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds.

- 80% of your indexed monthly earnings, if you are working; or

- 60% of your monthly earnings, if you are not working.

**Gross disability payment** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

**Hospital or institution** means an accredited facility licensed to provide care and treatment for the condition causing one's disability.

**Indexed monthly earnings** means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

**Injury** means a bodily injury that:

- is the direct result of an accident;

- is not related to any cause other than the accident; and

- results in immediate disability.

Disability must begin while you are covered under the plan.

**Insured** means any person covered under a coverage.

**Law, plan or act** means the original enactment of the law, plan or act and all amendments.

**Leave of absence** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time or any period of disability is not considered a leave of absence.

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified.

**Maximum monthly benefit** means the maximum benefit amount for which you are insured under this plan as shown in the Benefits Highlights.

**Maximum period of day care payment** means the longest period of time Prudential will make day care payments to you for any one period of disability.

**Bruno_Claim File 091**

***Maximum period of payment*** means the longest period of time Prudential will make payments to you for any one disability.

***Maximum period of rehabilitation payment*** means the longest period of time Prudential will make rehabilitation payments to you for any one period of disability.

***Maximum period of spouse and elder care payment*** means the longest period of time Prudential will make spouse and elder care payments to you for any one period of disability.

***Mental illness*** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

***Monthly earnings*** means your gross monthly income from your Employer as defined in the plan.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins

***Monthly payment*** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

***Part-time basis (LTD)*** means the ability to work and earn 20% or more of your indexed monthly earnings.

***Payable claim*** means a claim for which Prudential is liable under the terms of the Group Contract.

***Plan*** means a line of coverage under the Group Contract

***Recurrent disability*** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

***Reduced hours*** means you are working less than the number of hours required to be considered in active employment

***Regular care*** means:

- one personally visits a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat one's disabling condition(s); and

- one is receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for one's disabling condition(s) by a doctor whose specialty or experience is the most appropriate for one's disabling condition(s), according to generally accepted medical standards.

***Regular occupation*** means the occupation you are routinely performing when your disability begins Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

***Rehabilitation program*** means a program designed to assist you to return to work.

**Bruno_Claim File 092**

***Retirement plan*** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

***Salary continuation or accumulated sick leave (LTD)*** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Group Contract. This continued payment must be part of an established plan maintained by your Employer for the benefit of an employee covered under the Group Contract. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account as such, in calculating your monthly payment.

***Self-reported symptoms*** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

***Sickness*** means any disorder of your body or mind, but not an injury. Sickness includes pregnancy, abortion, miscarriage, childbirth, and any complication related to pregnancy. Disability must begin while you are covered under the plan.

***Substantial assistance*** means:

- the physical assistance of another person without which one would not be able to perform an activity of daily living; or

- the constant presence of another person within arm's reach which is necessary to prevent, by physical intervention, injury to oneself while one is performing an activity of daily living.

***Substantial supervision*** means continual oversight that may include cueing by verbal prompting, gestures, or other demonstrations by another person, and which is necessary to protect one from threats to one's health or safety.

***Temporary layoff*** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

***We, us, and our*** means The Prudential Insurance Company of America.

***You*** means a person who is eligible for Prudential coverage

83500
CGL-1010

(52957-11)

**Bruno_Claim File 093**

**The Claims and Appeals section**

**is not part of the**

**Group Insurance Certificate.**

**Bruno_Claim File 094**

# CLAIMS AND APPEALS

**Plan Benefits Provided by**

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits. For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees. Under no circumstances will the Employer/Policyholder be deemed the agent of The Prudential Insurance Company of America, absent a written authorization of such status executed between the Employer/Policyholder and The Prudential Insurance Company of America. Nothing in these documents shall, of themselves, be deemed to be such written execution.

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

**Claim Procedures**

1. **Determination of Benefits**

   Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

   If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

   (a)  the specific reason(s) for the denial,

   (b)  references to the specific plan provisions on which the benefit determination was based,

   (c)  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

   (d)  a description of Prudential's appeals procedures and applicable time limits, and

**Bruno_Claim File 095**

(e)  If an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

**2.  Appeals of Adverse Determination**

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.  You may submit with your appeal any written comments, documents, records and any other information relating to your claim.  Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by Prudential, utilizing individuals not involved in the initial benefit determination  This review will not afford any deference to the initial benefit determination.

Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request.  This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time.  A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period.  However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial.  The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a)  the specific reason(s) for the adverse determination,

(b)  references to the specific plan provisions on which the determination was based,

(c)  a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d)  a description of Prudential's review procedures and applicable time limits,

(e)  a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f)  a statement describing any appeals procedures offered by the plan.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second, voluntary appeal of your denial in

Claims and Appeals                                                    (52957-11)

**Bruno_Claim File 096**

writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.  You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Prudential shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request.  This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time.  A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan.  If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies.  If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial.  The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter.  If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

Bruno_Claim File 097

**Bruno_Claim File 098**

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

**MODIFICATIONS OF THE GROUP INSURANCE CERTIFICATE FOR ARIZONA RESIDENTS AS OF 09/17/2019**

If you are a resident of Arizona, the modifications described under a Coverage heading apply to your Group Insurance Certificate(s), but only if you are insured for the Coverage under the Group Contract. You are insured for a coverage as long as (1) the coverage is available to you under the plan of benefits; (2) you are eligible for the coverage; and (3) you meet the requirements for becoming and remaining insured for the coverage as described in your Group Insurance Certificate. In addition, a particular modification under a Coverage heading applies only if (1) all of the conditions described for that modification are met; and (2) that modification is in effect on the date a covered loss is incurred or a covered disability begins. The benefits applicable to your claim will be the benefits corresponding to your state of residence on the date the covered loss is incurred or the covered disability begins.

**Long Term Disability**

If you are insured for Long Term Disability Coverage under the Group Contract, then:

- There are no modifications that apply to your coverage at this time.

**Bruno_Claim File 099**



NEA BAPTIST CLINIC WOODSPRINGS FAMILY PRACTICE
2205 W. PARKER
JONESBORO AR 72404-7778
Office: 870-936-7612
Fax: 870-934-3660

October 3, 2019

Melissa Anne Bruno
208 Carson St
Bono AR 72416

Ms Martinez:

I have advised Ms Bruno to seek disability. Her current medical condition is too the point that she can longer perform the duties of her work. She has been in consultation with her specialist as well who agrees with this decision.

If you have any questions or concerns, please don't hesitate to call, with the permission of Ms Bruno of course.

Sincerely,

Wallace S Hoke, MD.

RE: Bruno, Melissa   Date of Birth: 10/20/1972   MRN: 10361043

**EXHIBIT 3**

**Bruno_Claim File 032**



**Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-889-4885
www.prudential.com/erphysicians

## Attending Physician Statement

### 1 Employee Information

Employer's Name: **B M H C C**

Employee First Name: **Melissa**   MI: **A**   Last Name: **Bruno**

Claim Number: ____   Social Security Number: ____   Date of Birth (mm dd yyyy): **10 20 1970**   Gender: ☐ Male ☒ Female

I hereby authorize the release of information requested on this form by the below named physician for the purpose of claim processing.

Employee Signature: X **Melissa A Bruno**   Date (mm dd yyyy): **09 30 2019**

The Employee is responsible for the completion of this form without expense to Prudential.

### 2 To Be Completed by Attending Physician

Clinical Diagnosis   ICD Code is Required

Primary: **J45.41**

Secondary: **J32.9**

Secondary: **K21.9**

Pregnancy EDC (mm dd yyyy): ____   Actual Delivery Date (mm dd yyyy): ____

Date when significant loss of function occurred (mm dd yyyy): ____

Do you feel the claimant is competent to endorse checks and direct the use of proceeds? ☒ Yes ☐ No

Return to Work Target Date (mm dd yyyy): ____   ☐ Full-Time   ☐ Part-Time   ☐ With Limitations (functions lost)

Please describe Return to Work Plan and provide any corresponding Limitations:
recommend she use x long term durability; other occupation as well as employer work ____ than ____

Please describe any Medical Obstacles to Return to Work:
SOB wheezing, anxiety, weight

Nature of Medical Impairment (i.e., loss of function):
asthma & SOB, wheezing, cough

Are there any Non-Medical Factors which have a significant impact on Functional Abilities (i.e., interpersonal, financial, family)?
caring for multiple family members, indoor cat

Check all that apply to this disability:
asthma, obesity, grandchild with seizures

| | Yes | No |
|---|---|---|
| Work Related | ☐ | ☒ |
| Accident | ☐ | ☐ |
| Sickness | ☒ | ☐ |
| Maternity | ☐ | ☐ |
| Motor Vehicle Accident | ☐ | ☐ |

If MVA, in what State did it occur? ____

Other Treating Physicians or Consultants:

First Name: **B**   Last Name: **Behrens**

Specialty: **Neuro-Sleep**   Telephone Number: **816 936 6000**

GL.2003.251  Ed. 11/2015

G L 0 3 2 5 1 A 0 1

Page 1 of 2

**EXHIBIT 4**

**Bruno_Claim File 024**

**Prudential**

Employee First Name: Melissa  MI: A  Last Name: Bruno

Claim Number: ____  Date of Birth (mm dd yyyy): 10 22 1972  Employee's Social Security Number: ____

**2 Attending Physician Information (Cont'd)**

Other Treating Physicians or Consultants
First Name: Sam  Last Name: Hiser

Specialty: Pulmonary  Telephone Number: 570 436 8606

Date of Surgical Procedure (mm dd yyyy): ____

Relevant tests and surgical procedure (if performed (please be specific): ____

Current Medications, Treatment, and Prognosis: see notes

First Visit (mm dd yyyy): 2016 09 19  Last Visit (mm dd yyyy): 2016 10 06  Next Visit (mm dd yyyy): 10 16 2016  Was Claimant hospital confined? ☐ Yes ☒ No

Previous Hosp, 12/15/4/2016

If yes, please provide name and address of hospital: ____  from (mm dd yyyy): ____  to (mm dd yyyy): ____

**3 Physician Information**

First Name: Sam  MI: R  Last Name: Hiser

Primary Telephone Number: 570 436 8606  Fax Number: 570 934 3606

Office Address: 4612 E Johnson  Suite: ____

City: Jonesboro  State: AR  ZIP Code: 72401

Specialty: Pulm

**4 Fraud Notice**

Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, and may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto

I have read and understand the terms and requirements of the fraud warning and I certify the above statements are true.

Physician Signature: X ____  Date (mm dd yyyy): 10 06 2016

© 2015 Prudential Financial, Inc. and its related entities.
Prudential, The Prudential logo, and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities, registered in many jurisdictions worldwide.

GL.2009.251    Ed. 11/2015    | *GL03251A02* |    358154    Page 2 of 2

Bruno_Claim File 025

# Prudential

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Phone: (800) 842-1718   Fax: (877) 889-4885
www.prudential.com/forphysicians

## Capacity Questionnaire

**1** 

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| M e l i s s a | A | B r u n o | 1 2 6 5 9 7 6 6 |

**2** To Be Completed by Physician

**In your medical opinion does the patient have:**

Full-time work capacity (8 hours, 5 days per week)?  Yes  ✓No

Part-time transitional work capacity?  Yes  / No  If yes, _____ hours, _____ days per week

**When do you estimate the patient will be capable of full-time return to work?**

_Not capable of return to work_

**Please indicate below what your patient is capable of performing currently during a typical day:**

| % of time | Never 0% | Occasionally 1%–33% | Frequently 34%–66% | Constantly 67%–100% |
|---|---|---|---|---|
| Standing | | ✓ | | |
| Walking | | ✓ | | |
| Sitting | | ✓ | | |
| Climbing Stairs | | ✓ | | |
| Climbing Ladders | | ✓ | | |
| Balancing/Heights | | ✓ | | |
| Stooping | | ✓ | | |
| Kneeling/Crawling | | ✓ | | |
| Reaching Desk Level | | ✓ | | |
| Reaching Overhead | | ✓ | | |
| Right Handling/Mousing | | ✓ | ✓ | |
| Right Fingering | | | ✓ | |
| Right Keyboarding | | | ✓ | |
| Left Handling/Mousing | | | ✓ | |
| Left Fingering | | | ✓ | |
| Left Keyboarding | | | ✓ | |
| Lifting/Carrying (up to 10 pounds) with both hands | | ✓ | | |
| Lifting/Carrying (up to 20 pounds) with both hands | ✓ | | | |
| Lifting/Carrying (up to 50 pounds) with both hands | ✓ | | | |

GL 2012 240   Ed 9/2017

Page 1 of 2

**EXHIBIT 5**

NEXRADFAX01    11/4/2019 2:46:48 PM  PAGE  1/002  Fax Server

 **Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Phone: (800) 842-1718   Fax: (877) 889-4885
www.prudential.com/myphysicians

### Capacity Questionnaire, continued

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Melissa | | Bruno | 1 2 6 5 9 7 6 6 |

Please list any other medically necessary restrictions (activities he/she should not do) and/or limitations (activities he/she cannot do)

*Unable to work due to respiratory failure due to asthma*

Please explain and comment on the expected duration of any restrictions and/or limitations

*duration is lifelong*

If your patient has restrictions or limitations that impact work hours or work duties, are there any accommodative measures (i.e., modifications to the workplace or job, to work equipment, or to how work is done) that you believe would allow the patient to increase work capacity? Examples of accommodations include adeptive devices (e.g., voice recognition software, foot-controlled mouse, lifting devices), working from home, scheduling flexibility, breaks during the workday, etc.

*No modifications are possible.*

**3** **Physician Certification**

My opinion is based on ☐ The patient's self-reported severity of symptoms   ☑ Objective findings.

The above restrictions and limitations are an estimate of my patient's current capacity and a vocational rehabilitation program would be beneficial in order for this patient to return to work   Yes ☐   No ☐

We would appreciate a response within two weeks from when you receive this letter. In the absence of return communication, our opinion will be based on the information we have available in the file.

**Fraud Notice:**
Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, is/may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto

I have read and understand the terms and requirements of the fraud warning and I certify the above statements are true.

Physician's Signature:

Date Signed
*11 04 2019*

Physician's Printed Name   *W. Scott Hoke MD*

Specialty   *FAMILY MEDICINE*

**Please FAX this completed document to 1-877-889-4885. Please make sure the claimant's name and claim number are entered at the top of each page. Thank You.**

© 2017 Prudential Financial, Inc. and its related entities
Prudential, The Prudential logo, and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities, registered in many jurisdictions worldwide.

GL 2012 240   Ed 9/2017

1496069   Page 2 of 2



2020-01-22 11:42 CST    Melissa Bruno                                    +1E70530E740

## MEDICAL SOURCE STATEMENT - PHYSICAL

Medical Source: Dr. Scott Hoke at NEA Baptist

Patient's Name: Melissa Bruno                      DOB: 10/20/1972

[ ] NO PHYSICAL IMPAIRMENT

1.    WHAT THE PATIENT CAN DO DESPITE HIS OR HER IMPAIRMENT(S)

A    [ ] UNLIMITED

[ ] LIMITED, BUT RETAINS MAXIMUM CAPACITIES TO:

*With chronic asthma and acute exacerbations she would have significant limitations in her activity*

1. FREQUENTLY LIFT AND/OR CARRY (1/3 - 2/3 of the time during a typical 8-hour workday):
[ ] Less than 10 pounds        [ ] 10 pounds    [ ] 25 pounds
[ ] 50 pounds                  [ ] More

*to the point of being bedridden on worst days*

2. OCCASIONALLY LIFT AND/OR CARRY (up to 1/3 of the time during a typical 8-hour workday):
[ ] Less than 10 pounds        [ ] 10 pounds    [ ] 25 pounds
[ ] 50 pounds                  [ ] More

3. STAND AND/OR WALK:
a) A TOTAL of:    (1) 2 3 4 5 6 7 8 in an 8-hour workday (circle the most appropriate):
b) CONTINUOUSLY for:____ in an 8-hour workday.

*but may be bedridden at times.*

4. SIT:
a) A TOTAL of:    1 (2) 3 4 5 6 7 8 in an 8-hour workday (circle the most appropriate):
b) CONTINUOUSLY for:____ in an 8-hour workday.

5. PUSH and/or PULL (Including operation of hand and/or foot controls):
[ ] UNLIMITED
[ ] LIMITED (Describe Degree of Limitation) *at bedrest at times*
*With asthma, she is*

*Knee pain for at least 6 months. No trauma. Makes ambulation difficult. Pain awakens her at night. xray demonstrates loss of cartilage*

**EXHIBIT 6**

**Bruno_Claim File 309**

**B. OTHER PHYSICAL FACTORS:**

| | Frequently | Occasionally | Never | | Unlimited | Limited |
|---|---|---|---|---|---|---|
| 1. Climbing | [ ] | [ ] | [ ] | 7. Reaching | [ ] | [ ] |
| 2. Balancing | [ ] | [✓] | [ ] | 8. Handling | [✓] | [ ] |
| 3. Stooping | [ ] | [✓] | [ ] | 9. Fingering | [✓] | [ ] |
| 4. Kneeling | [ ] | [ ] | [✓] | 10. Feeling | [✓] | [ ] |
| 5. Crouching | [ ] | [ ] | [✓] | 11. Seeing | [✓] | [ ] |
| 6. Bending | [ ] | [✓] | [ ] | 12. Hearing | [✓] | [ ] |
| | | | | 13. Speaking | [✓] | [ ] |

14. Environmental restrictions (e.g. heights, machinery, temperature extremes, dust, fumes, humidity, vibration, etc.):   None [ ]        Yes [x] (Describe in C below).

*during certain times of the year, she has something*

C. Briefly describe in what ways the impaired activities (items 7-14 only) are limited:

*her asthma due to allergies, these would be considered seasonal allergies.*

D. Briefly describe the principal clinical and laboratory findings and symptoms or allegations (including pain) from which the impairment-related capacities and limitations indicated in 1 A, A B, and 1 C were concluded.

*Her FEV₁ has declined 21% in the last 4 years. This is due to asthma.*

E. Does this physical ability statement include consideration of all pain, discomfort and/or other subjective complaints?

Yes [✓]      No [ ]

F. Assessment is for the time period   *2010*   to   (Ongoing)

G. Additional comments: _____

PHYSICIANS SIGNATURE:                          DATE:

*[signature]*                                  *1/6/2020*

January 8, 2020

To whom it may concern:

For the past two years, Melissa Bruno has served as a manager in the Population Health department. She was a valuable asset to our organization so we worked very hard to adjust different work elements for the benefit of her health in order to allow her to continue working.

At the beginning of last year, we relocated her from the main clinic location to an offsite location for several reasons. The main clinic sees 100s of patients in any given day. This posed as a serious health threat for Melissa. Moving her offsite drastically reduced her exposure to unhealthy individuals. Additional, the offsite location provided a much closer parking space, eliminating extra walking that could trigger her asthmatic symptoms. We also placed her in an office that was separate from the rest of the staff within that area.

During seasons of extreme weather, Melissa was permitted to work from home to avoid overexerting herself. This also prevented exposure to illness while she has a weakened immune system.

Even with these major adjustments, we still watched her health decline. We are very sad to lose her but her health needs to be top priority.

Please feel free to contact me, should you have any questions.

Thank you

*Jennifer Martinez*

Jennifer Martinez
Director- Population Health
NEA Baptist Clinic

**EXHIBIT 7**

**Bruno_Claim File 311**

01/21/20  18:17:44  Prudential       →      NEABCFAX01 Nicholas Parshall    Page 002

# Prudential

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Phone: (800) 842-1718  Fax: (877) 889-4885
www.prudential.com/iarphysicians

## Capacity Questionnaire

**[1]**

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| M e l i s s a | | B r u n o | 1 2 6 5 9 7 6 6 |

**[2]**
**To Be Completed by Physician**

In your medical opinion does the patient have:
Full-time work capacity (8 hours, 5 days per week)?  ☐ Yes  ☒ No
Part-time transitional work capacity?  ☐ Yes  ☒ No  If yes, _____ hours, _____ days per week

When do you estimate the patient will be capable of full-time return to work?

*indefinitely - not capable to return to work*

Please indicate below what your patient is capable of performing currently during a typical day:

| % of time | Never 0% | Occasionally 1%–33% | Frequently 34%–66% | Constantly 67%–100% |
|---|---|---|---|---|
| Standing | ☒ | ☐ | ☐ | ☐ |
| Walking | ☒ | ☐ | ☐ | ☐ |
| Sitting | ☒ | ☐ | ☐ | ☐ |
| Climbing Stairs | ☒ | ☐ | ☐ | ☐ |
| Climbing Ladders | ☒ | ☐ | ☐ | ☐ |
| Balancing/Heights | ☒ | ☐ | ☐ | ☐ |
| Stooping | ☒ | ☐ | ☐ | ☐ |
| Kneeling/Crawling | ☒ | ☐ | ☐ | ☐ |
| Reaching Desk Level | ☒ | ☐ | ☐ | ☐ |
| Reaching Overhead | ☒ | ☐ | ☐ | ☐ |
| Right Handling/Mousing | ☐ | ☒ | ☐ | ☐ |
| Right Fingering | ☐ | ☒ | ☐ | ☐ |
| Right Keyboarding | ☐ | ☒ | ☐ | ☐ |
| Left Handling/Mousing | ☐ | ☒ | ☐ | ☐ |
| Left Fingering | ☐ | ☒ | ☐ | ☐ |
| Left Keyboarding | ☐ | ☒ | ☐ | ☐ |
| Lifting/Carrying (up to 10 pounds) with both hands | ☐ | ☒ | ☐ | ☐ |
| Lifting/Carrying (up to 20 pounds) with both hands | ☒ | ☐ | ☐ | ☐ |
| Lifting/Carrying (up to 50 pounds) with both hands | ☒ | ☐ | ☐ | ☐ |

**EXHIBIT 8**

GL.2012.240  Ed. 8/2017                    Page 1 of 2

*692466*



**Bruno_Claim File 321**

# Prudential

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Phone: (800) 842-1718  Fax: (877) 889-4885
www.prudential.com/forphysicians

## Capacity Questionnaire, continued

| First Name | | | | | | | | | | | MI | Last Name | | | | | | | | | | | Claim Number | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M | e | l | i | s | s | a | | | | | | B | r | u | n | o | | | | | | 1 | 2 | 6 | 5 | 9 | 7 | 6 | 6 |

Please list any other medically necessary restrictions (activities he/she should not do) and/or limitations (activities he/she cannot do):

Unable to work due to respiratory failure due to asthma

Please explain and comment on the expected duration of any restrictions and/or limitations.

Lifetime

If your patient has restrictions or limitations that impact work hours or work duties, are there any accommodative measures (i.e., modifications to the workplace or job, to work equipment, or to how work is done) that you believe would allow the patient to increase work capacity? Examples of accommodations include: adaptive devices (e.g., voice recognition software, foot-controlled mouse, lifting devices); working from home; scheduling flexibility; breaks during the workday; etc.

None

## 3 Physician Certification

My opinion is based on:     ☐ The patient's self-reported severity of symptoms.     ☑ Objective findings.

The above restrictions and limitations are an estimate of my patient's current capacity and a vocational rehabilitation program would be beneficial in order for this patient to return to work.     ☐ Yes     ☑ No

We would appreciate a response within two weeks from when you receive this letter. In the absence of return communication, our opinion will be based on the information we have available in the file.

**Fraud Notice:**

Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, is/may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

I have read and understand the terms and requirements of the fraud warning and I certify the above statements are true.

| | Date Signed |
|---|---|
| Physician's Signature: | 0 1 2 3 2 0 2 0 |
| Physician's Printed Name:  Dr. Wallace S. Hoke | |

Specialty   Family Practice

**Please FAX this completed document to 1-877-889-4885. Please make sure the claimant's name and claim number are entered at the top of each page. Thank You.**

© 2017 Prudential Financial, Inc. and its related entities.

Prudential, The Prudential logo, and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities, registered in many jurisdictions worldwide.

GL.2012.240  Ed. 9/2017                         1488069         Page 2 of 2

* 6 9 2 4 6 *



## SOAP Note

**Date Created:**        03/03/2020

**Claim Number:**      12659766
**SOAP Date:**          01/29/2020
**Claim Manager:**     McDermott RN, Cheryl
**CATEGORY:**          Capacity/Clinical Review
**REASON:**            CI012

**1 SUBJECTIVE:**

**2 OBJECTIVE:**

**3 ANALYSIS:**

Claim 12659766 Bruno
LTD IB: 12/16/19- A/O & M/N & SRS 12/16/2021

BASIC DEMOGRAPHIC INFORMATION:
Clmt is a 47 y o. female clinical research inst. sedentary pdl oow 9/17/19 for Asthma. severe asthma - pedal edema (swollen feet), anxiety, morbid obesity due to steroids- asthma affecting work

MEDICAL INFORMATION REVIEWED: 9/17/19-1/6/20

CLAIMANT REPORT
TPC clmt 11/1/9 EE adv this past year she doesn't know why but she has just gotten more and more sick and she can't seem to recover like she used to- and is missing more and more work - hard to be good employee when she cant be there- a lot of things that she needs to go through- when she speaks w/ pulmonary- that stress can't help- she notes she is on steroids too which stresses her and doesn't help w/ the shots- EE adv trying to limit exposure people w/ illness but her job entails being around people / employees- EE adv she catches everything  - can't seem to get over it - had to file FMLA this year because her boss said she's at the point where she would be fired if she worked anywhere else- so filed FMLA to protect her job- EE thought on FMLA it would give more rest- she notes keep missing more and more work-EE adv now family suffering too when she gets home from work she just falls asleep and cant doing anything else - has been talking w/ AP for months about disability she kept trying to put it off but didn't want to but appears she needs to- AP thinks it was a good idea to get on disability- AP noted he will be honest w/ EE and said if she keeps going as she's going she's not going to be there------ EE adv she did really try 2 years ago she was managing 4 different offices - and got a new job w/ less stress- EE adv stress has ramped back up though- EE adv she also gets 3 Advair shots every 2 weeks for her asthma

Page 1 of 3

**EXHIBIT 9**

**Bruno_Claim File 339**

ADL:
clmt reports out for asthma too ill often to attend work on regular basis and missing work unable to fulfill responsibilities. Allergic to so many thing that flare asthma and exposure to public results in resp illness, high stress {clmt 2 yrs ago took a different position with less stress and moved office to less exposure with public and decreased hrs}, clmt reports memory issues when sick. Dr. Hoke PCP supporting oow nov Dr. Hoke Jan 2019 previous 11/4/19. Pulmonary S. Hiser Iov 11/11/19. Meds: Xolair Xopenex Proventil {furosemide-only new meds from 4/20/19} onasl, Zyrtec, pantropazole all rest of the meds clmt has been on 2010 2014 2016 2018. Cltm reports has to sleep sitting up due to weight increase from steroids and snoring. NO Assistance with Grooming, cltm reports uses a scooter if walking a long time. Clmt can prepares meals when sick family does, clmt drives from MD appts 1-2 x week. Clmt fly's as son in military and states needs help and lots of time for connections. Spouse manages finances, cltm performs housework when not in asthma flare , cltm spend time with toddler granddaughter who is in daycare . her mom is primary caretaker, clmt shops if requires long waling needs assistance , clmt reads 2-3 hrs daily, watches TV 2-3 hrs daily uses social media clmt does not feel will rtw stress levels and steroid use keep immune system compromised and exposure to resp illness or allergens causes asthma flare

PROVIDER OPINION:
10/3/19 Dr. Hoke Family MD - clmt too point can no longer perform duties of her work and specialist agrees
10/8/19 APS Dr. Hiser pulmonary-clmt with asthma shortness of breath, wheeze and cough. {clmt is caring for multiple family members, has indoor cat
10/8/19 S. Hiser APRN advised clmt to seek permanent disability. Reached point in her disease she can no longer perform required work duties. Inability to complete job causing resultant anxiety. Job re-assignment has not previously helped. Missing more work than attending
11/4/19 Work cap form Family Med Dr. Hoke -clmt not capable of returning to work. {can do everything occasionally except frequently right/left finger handle occ lift to 10 lbs } MD states clmt unable to work due to respiratory failure due to asthma lifelong duration
1/6/20 S. Heiser-clmt with chronic asthma and acute exacerbation would have significant limitations in her activity, frequently lift less than 10 lbs occasionally lift/carry less than 10 lbs stand/walk 1 hr sit 2 hrs total clmt with knee pain complaints as well making ambulation difficult and sleeping x-ray noted loss of cartilage cltm can never climb, occ balance, occ stoop never kneel or crouch occ bend unlimited right left handling reaching fingering feeling seeing hearing and speaking

CLINICAL ASSESSMENT/CONCLUSION : R/L's; Functional Capacity Duration; Prognosis

ER letter: beginning last year ER relocated clmt from the main clinic location to offsite location as main clinic sees 100s of patients a day and this posed a health risk for clmt. Moving her offsite drastically reduced her exposure to unhealthy individuals closer parking , during extreme weather she was permitted to work from home to avoid overexerting herself and prevent exposure to illnesses but her health continued to decline

Clmt is a 47 y.o female clinical research inst. sedentary pdl oow 9/17/19 for Asthma. severe asthma - pedal edema (swollen feet), anxiety, morbid obesity due to steroids- asthma affecting work. Dating back to 7/2/19 clmt was noted with some pedal edema , dx with sleep apnea awaiting Cpap {clmt has morbid obesity BMI was 54.24}. At time clmt went oow clmt was having flares of asthma with cough, sinus problems, short of breath, wheezing cltm placed on Steroids. 9/23/19 clmt see by Pulmonary NP noted to have significant asthma but a h/o normal PFT's clmt was on Xolair Singulair Albuterol Xopenex and Cetirizine. Clmt was hosp 1x this tear and 2 times in 2017 . clmt was noted on exam not to be in respiratory distress but did have decreased breath sounds 4/2/19 chest x-ray was normal and last PFT Sept 2015 was normal O2 sat on exam 97% which is above 95% the normal. 10/3/19 clmt saw pulmonary asking for permanent disability clmt's BMI is 54.93 on exam she was in No Distress noted to have a h/o persistent asthma and exacerbations cltm noted with bilateral edema LE which is noted to be a chronic condition. 10/14/19 exam from pulmonary NP {indicates clmt's grandbaby and daughter live with her, grandbaby goes to daycare which could exposure

**Bruno_Claim File 340**

her to additional illnesses} BMI 54.76 o2 sat 99% resp 28 oriented x3 well developed well- nourished no distress oropharynx clear no thyromegaly heart normal normal resp effort no stridor no resp distress no wheezes has rhonchi no rales no tenderness normal musculoskeletal rom  no edema or tenderness no cervical adenopathy alert and oriented normal mood and affect ECHO: mild mitral regurgitation otherwise normal. Respiratory NP is supporting clmt oow indefinitely but no current diagnostics to validate this  her Echo showed only mild mitral regurgitation otherwise normal. It appears 11/4/19 clmt seen post hosp for asthma exacerbation exposed to RSV  on antibiotics diuretic and steroids x3 wk cough improved less wheezing  o2 sat 99% clmt not in acute distress  pulmonary exam was normal pulmonary effort is normal no resp distress normal breath sounds no wheezing. 11/11/19 clmt noted had PFT normal today but 21% decline in FEV1 over last 4 years but on exam clmt's pulmonary effort is normal,  no resp distress , normal breath sounds,  no stridor, no wheezing or rale. Clmt has chronic right LE edema pitting { clmt was to complete prednisone taper complete antibiotics   Pulmonary NP  and PCP supporting oow indefinitely

11/12/19 clmt is on cpap and sleep apnea should not be precluding clmt from working


It appears cltm had asthma exacerbation 9/2019 and again  11/4 and 11/11/19 however based on the 11/11/19 exam clmt's PFT were normal even know FEV1 decreased clmt's pulmonary effort was normal clmt was not in resp distress had normal breath sounds no stridor no wheezing  or rale. It appears clmt has exposure at home of grandbaby in daycare exposing her to viruses.
There is no exam evidence clmt is unable to sit frequently to constantly, stand/walk occasionally, no exam evidence clmt is unable to reach frequently to constantly and left/right finger and handle  frequently to constantly. Stair climbing occasionally, balance occasionally never kneel crouch, occasionally bend  lift/carry push/pull to 10 lb occasionally, unlimited feeling, seeing,  hearing and speaking. No memory issues supported.

Clmt reports in ADL's -NO Assistance with Grooming, clmt reports uses a scooter if walking a long time {which could use at work}.  Clmt can prepares meals when sick family does, clmt drives from MD appts 1-2 x week. Clmt fly's as son in military and states needs help and lots of time for connections. clmt performs housework when not in asthma flare , clmt spends time with toddler granddaughter who is in daycare . clmt shops  if requires long walking needs assistance , clmt reads  2-3 hrs daily, watches TV 2-3 hrs daily uses social media


NEXT STEPS/ACTION PLAN : while providers are supporting clmt oow there is not dx testing or result to correlate with respiratory failure or distress to preclude clmt from performing sedentary work capacity

Dr. Baker suggested write out to pulmonary NP -done awiting reply

CAP CODE: CAP recovered from asthma exacerbation as of 11/11/19 and LTD IB: 12/16/19-
Cheryl McDermott RN


**4 PLAN:**

to dcm

**Bruno_Claim File 341**

 **Prudential**

Nicholas Parshall
Disability Claim Manager

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 87625
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 52957

February 14, 2020

Melissa Bruno
208 Carson St
Bono, AR  72416

Claimant: Melissa Bruno
Claim No.: 12659766
Control No./Br.: 52957 / 00002

Dear Ms. Bruno:

We have completed our review of your claim for Long Term Disability (LTD) benefits provided by Baptist Memorial Health Care Corporation. Please read this letter in its entirety. It provides important information about your claim.

In order to be eligible for LTD benefits, you must meet all of the terms of the LTD Policy including the definition of disability as defined in the attached Long Term Disability Policy Provisions. After careful review, we have denied your claim and no benefits are payable. This letter outlines our reasons for this determination.

**Claim Information**

Your claim states that you discontinued working as Quality Improvement Clinical Liaison on September 17, 2019 due to severe asthma.

You report that you are unable to perform the duties of your regular occupation due to asthma. You noted you are ill too often to attend work on a regular basis.

Your treating physician opines that you have chronic asthma and acute exacerbation which limit your activity. Your physician notes you could not frequently lift 10 pounds and that you have limited ability to consistently stand or walk.

**Summary of Medical Information Reviewed**

We have reviewed the medical records in file from Dr. Hoke, Dr. Walker, Hisner APRN and Dr. Behrens.

Your file has been reviewed by our clinical team. Based on the review of the file, we find that there is no exam evidence that you are unable to sit frequently to constantly, stand/walk at least occasionally, there is no exam evidence that you are unable to reach frequently to constantly and left/right finger and handle frequently to constantly.

**EXHIBIT 10**

**Bruno_Claim File 411**

**Your Regular Occupation**

You are a Quality Improvement Clinical Liaison. Based on information in file, we have determined that your regular occupation is consistent with the occupation of a Quality Improvement Clinical Liaison which is a sedentary occupation. This occupation requires occasionally lifting up to 10 pounds, sitting frequently to constantly, stand/walk occasionally and frequent reaching, handling, fingering and keyboard use.

**Summary**

In reviewing the medical information we have on file, it appears you were noted to be alert, oriented, well-nourished and in no distress. Your respiratory exam noted normal respiratory effort, no stridor, no respiratory distress, no wheezes, no rhonchi as well as rales. You are noted to have continued normal PTF testing on November 11, 2019 even with a 21% decline in Tiffeneau-Pinelli index (FEV1) over the last 4 years. Your oxygen saturation on exams were normal. While you had reported inability to work due to being around people affecting your immune system, the notes indicate you are exposed to a baby granddaughter who is in daycare. Per your Activities of Daily Living Questionnaire you note ability to groom yourself, prepare meals and drive to doctor appointments, fly to visit your son in the military, spend time with your granddaughter who is in daycare, shop, read 2 to 3 hours a day, watch TV 2 to 3 hours a day, and use social media which is consistent with seated office work.

Based on the details above, the evidence supports you would have the ability to frequently to constantly sit, stand/walk at least occasionally, reach and finger frequently to constantly, and the ability to lift up to 10 pounds.

We have determined that the information in your file does not support impairment that would prevent you from performing the material and substantial duties of your regular occupation.

We wrote out to Dr. Walker with our opinion on your capacity. We asked if they disagreed with our assessment to respond to us and provide the reason they disagree with our assessment and to include medical records and objective findings that would corroborate their findings. We asked Dr. Walker's office to respond within 10 business days. We faxed our opinion of capacity to Dr. Walker's office on January 30, 2020 and to date we have not received a response.

After a thorough evaluation of the information in your file, we have determined that you do not meet the definition of disability as defined in the attached Long Term Disability Policy Provisions. Therefore, we have denied your claim.

If you disagree with this decision you have the right to appeal. We have enclosed information on our appeal process should you choose to appeal this decision. The enclosure also lists the information that should be included with your appeal. If you wish to appeal, you must follow the process in the enclosure and submit your written appeal within 180 days of receiving this letter. Send your appeal to the fax number or mailing address shown above. Documents sent to Prudential are kept confidential and are generally available for our review within 24 hours of receipt.

Bruno_Claim File 412

If you have questions about our decision on your claim, you may call the number listed above. If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,

*Nicholas Parshall*

Nicholas Parshall
Disability Claim Manager

Attachments:
Language Assistance
Long Term Disability Policy Provisions
Appeal Rights

**Bruno_Claim File 413**



202 W. MEADOW
FAYETTEVILLE, AR 72701
P 479.957.9645
TF 877.825.0323

# LACY LAW FIRM

BRANDON@LACYLAWFIRM.COM    ◆    WWW.LACYLAWFIRM.COM

630 S. MAIN STREET
JONESBORO, AR 72401
P 870.277.1144
F 870.277.1143

August 12, 2020

**VIA FACSIMILE TO 877-889-4885**

The Prudential Insurance Company of America
Appeals Review Unit
P. O. Box 13480
Philadelphia, PA 19176

    *Re:* *Melissa Bruno*
      *Claim No.: 12659766*

Dear Sir or Madam,

  Please accept this letter as a formal appeal submitted on behalf of my client, Melissa Bruno, in connection with her claim for long-term disability benefits under the above-referenced policy. Prudential's denial letter dated February 14, 2020 concluded that Mrs. Bruno is not disabled as she has failed to demonstrate that she is unable to perform the duties of her regular occupation. For the reasons more fully set forth below, this decision is misplaced.

  Mrs. Bruno was employed as a Quality Improvement Clinical Liaison at Baptist Memorial Healthcare Clinic. Her job duties require that she lift from the floor to waist level up to 15 pounds occasionally and waist level and above ten pounds occasionally. They require sitting, standing and walking, carrying, pushing/pulling, twisting, bending, reaching, squatting/kneeling/crawling, wrist position deviation, pinching/fine motor activities, and keyboard use/repetitive motion occasionally. The job duties also reasonably anticipate occupational exposure and risk to blood-born pathogens, chemicals, airborne communicable disease, extreme temperatures, radiation, uneven services or elevation, extreme noise levels, and dust/particulate matters. As Prudential concluded in its Vocational Review, and my client agrees, her occupation is considered sedentary in nature.

  Mrs. Bruno has been treated by a pulmonologist for asthma and associated complications for over seven years. Complications from this condition have led to multiple hospitalizations. Her condition led to a decline in her performance of her occupational duties. As more fully demonstrated below, her employer attempted to accommodate her condition, without success. Mrs. Bruno was hospitalized in April 2019 for a respiratory condition, and this led to her treating physicians, both pulmonologist and family care doctor, advising her she needed to apply for disability and refrain from further work. In fact, the office visit note of April 2019 which led to her hospitalization

**EXHIBIT 11**

indicated that she could not walk without respiratory distress.

Mrs. Bruno's claim for disability was supported by both her family care doctor and her pulmonologist. In a letter dated October 3, 2019, Dr. Wallace Hoke, family practice, stated "Her current medical condition is to the point that she can no longer perform the duties of her work." Mr. Sam Hiser, APRN, signed an Attending Physician Statement on October 8, 2019, likewise recommending that she obtain long-term disability as her asthma, shortness of breath, wheezing, cough, and anxiety were causing her to miss more work that attend. The encounter note attached to the Attending Physician Statement signed by Mr. Hiser, APRN stated that "she has reached a point in her disease that she can no longer perform at the required duties of her employer. Her inability to complete her job duties is only making her medical condition worse due to a result in anxiety." Dr. Hoke also completed a Capacity Questionnaire in connection with Mrs. Bruno's claim, signed on November 4, 2019, stating that she was "unable to work due to respiratory failure due to asthma." Dr. Hoke indicated that the expected duration of these restrictions and limitations were "lifelong" and that "no modifications are possible." Dr. Hoke certified that this opinion was based upon objective findings.

On November 22, 2019, Mrs. Bruno submitted a Medical Source Statement signed by Sam Hiser, APRN noting that Mrs. Bruno could only lift less than ten pounds frequently or occasionally, and stand/walk for a total of one hour in an eight-hour day (noting that she may be bedridden at times). These restrictions directly conflict with the requirements of her job as listed in the job description in the claim file as set forth above. In addition, Mr. Hiser noted that Mrs. Bruno's Forced Expiratory Volume has declined 21% in the last four years due to asthma. Obviously, the FEV decline constitutes objective clinical evidence, confirmed by diagnostic testing, to support the diagnoses underlying Mr. Hiser's opinions.

Also attached to the submission on January 22, 2020 was a letter from Mrs. Bruno's supervisor outlining the decline in Mrs. Bruno's condition and her resulting inability to perform her work duties over the past two years. As explained by Jennifer Martinez, Director-Population Health at NEA Baptist Clinic, accommodations were made by moving Mrs. Bruno's office offsite and allowing her to work from home in order to prevent her exposure to illness given her compromised immune system. Even with these accommodations, Mrs. Bruno's health continued to decline.

On January 23, 2020, Dr. Hoke signed a Capacity Questionnaire stating that Mrs. Bruno could not stand, walk, sit, climb stairs, climb ladders, balance, stoop, kneel/crawl, reach at desk level or reach overhead, lift/carry up to 20 pounds, lift/carry up to 50 pounds, and that she could only occasionally right handle, right finger, right keyboard, left handle, left finger, and left keyboard. Dr. Hoke repeated his prior opinion that she is "unable to work due to respiratory failure due to asthma."

Despite the above evidence, Prudential relied upon the opinion of an RN, Cheryl McDermott, who stated that "there is not dx testing or result to correlate with respiratory failure or distress." Consequently, Prudential denied Mrs. Bruno's claim by letter dated February 14, 2020.

-2-

Setting aside the absurdity of the statement that there is no diagnostic testing when, in fact, the record is clear that Mrs. Bruno's FEV level decreased by 21% over four years, Mrs. Bruno submitted additional evidence to Prudential following receipt of her denial letter:

Mr. Hiser completed a Questionnaire in which the question was asked why she had a normal PFT testing even with a 21% decline in FEV. Mr. Hiser answered "I feel this is only due to our aggressive care and Xolair injections." In support of this opinion, Mr. Hiser noted that Mrs. Bruno had been receiving steroid injections over the past seven years. Thus, it is clear that the objective findings supporting the underlying diagnosis date back seven years. Prudential never even attempted to obtain those records, and instead that there are no objective findings to support the diagnosis. In other words, rather than requesting the records, Prudential concluded instead that Mrs. Bruno's pulmonologist is essentially committing malpractice by treating a condition that does not exist.

Mr. Hiser's response further noted that Mrs. Bruno had a follow-up exam in February 2020 in which she had just completed antibiotics and was again requiring narcotic cough syrup to control her cough. Mr. Hiser also referenced Mrs. Bruno's multiple lengthy hospital stays, and that the amount of steroid injections and tapers are extraordinary. Despite Mr. Hiser's response to the Questionnaire, Prudential reaffirmed its denial, again relying upon the opinion of an RN that the pulmonologist and PCP's opinions were not supported with objective medical findings.

As explained above, Nurse McDermott's opinion is simply wrong. Perhaps if Prudential had asked a pulmonologist or a primary care physician to review the records, Prudential would have a more realistic assessment of the available medical information. Instead, a nurse opined that no objective medical evidence exists in the file despite clear evidence that objective diagnostic testing revealed a 21% decline in FEV. The only reason a correlating decline in pulmonary function was not noted was due to the extraordinary use of steroid injections. To claim that such treatment was given without objective evidence is an insinuation that Mrs. Bruno's physicians have committed malpractice. Clearly this is not the case. In fact, their opinions explain that their course of treatment has been based over their treatment of Ms. Bruno for seven years. To support their contentions, we have requested her pulmonolgy records dating back this long and will forward them in a supplemental response. Likewise, we have requested the hospital records from Mrs. Bruno's multiple lengthy hospitalizations to show that, what Prudential has claimed is not supported by objective findings, has actually led to her muliple hospitalizations.

At this time, we are attaching additional medical records from NEA Baptist Clinic which include pulmonary records from Mr. Hiser's recent follow-up noted in the last response, along with additional follow-up records to date. These records demonstrate that Mrs. Bruno's condition has not improved, but has further declined.

We feel confident that, if not overturned, Prudential's decision denying Mrs. Bruno's claim for disability benefits will be considered arbitrary and capricious by a Court of law, not only entitling Mrs. Bruno to all benefits owed to date, but also to an award of attorney's fees and costs associated

with the pursuit of a lawsuit.  We look forward to receiving your decision overturning the denial as soon as possible.

Yours truly,

Brandon W. Lacy

BWL/sc
Enclosure(s): As stated above

cc:    Mrs. Melissa Bruno (via electronic mail)

Case 3:21-cv-00109-BRW    Document 2    Filed 06/07/21    Page 82 of 87
TO: 18702771145  From: 11325423011  Date: 04/29/21  Time: 1:31 PM  Page: 02

04/29/21  09:32:09  Prudential          → No ID          SHIELDS, KIERAN          Page 002

 **Prudential**

Kieran Shields
Appeals Specialist

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84610
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 52957

April 29, 2021

Brandon Lacy
Lacy Law Firm                                    Claim No.: 12659766
630 S. Main Street                               Claimant: Melissa Bruno
Jonesboro, AR 72401                              Plan No.: 52957
                                                 Plan Name: Baptist Memorial Health Care
                                                 Corporation

Dear Attorney Lacy:

We have completed our review of Melissa Bruno's second request for reconsideration of our
decision to disallow the claim for Long Term Disability (LTD) benefits under the Group Policy
No. 52957 issued to Baptist Memorial Health Care Corporation. We have determined our
decision was appropriate and have upheld our decision to disallow the claim for LTD benefits.
This letter outlines the reasons for this determination

In order to be eligible for LTD benefits, Melissa Bruno must meet all of the terms of the LTD
Policy including the definition of disability as defined in the attached Long Term Disability
Policy Provisions.

### Claim History

The claim states Melissa Bruno discontinued working as a Quality Improvement Clinical Liaison
as of September 17, 2019 due to severe asthma. Her claim for LTD benefits was denied because
we determined the medical information received did not support impairment that would prevent
her from performing the material and substantial duties of her regular occupation. We found there
was no exam evidence that she was unable to sit frequently to constantly, stand/walk at least
occasionally, reach frequently to constantly and left/right finger and handle frequently to
constantly. Her respiratory exam noted normal respiratory effort, no stridor, no respiratory
distress, no wheezes, no rhonchi as well as rales. She was noted to have continued normal
Pulmonary Function Tests (PFT) on November 11, 2019 even with a 21% decline in Tiffeneau-
Pinelli index (FEV1) over the last 4 years. Her oxygen saturation on exams were normal. While
she had reported being unable to work due to being around people affecting her immune system,
the notes indicate she is exposed to a baby granddaughter who is in daycare. She reported
Activities of Daily Living Questionnaire consistent with seated office work. We determined the
information in her file does not support impairment that would prevent her from performing the
material and substantial duties of her regular occupation A complete explanation of that decision
can be found in our letter dated February 14, 2020.

### Initial Appeal Review

We previously received the first request to appeal our decision to deny your client's claim for
LTD benefits.

**EXHIBIT 12**

Case 3:21-cv-00109-BRW    Document 2    Filed 06/07/21    Page 83 of 87
To: 18702771143  From: +17325423012    Date: 04/29/21  Time: 1:31 PM Page: 03

04/29/21  09:32:34  Prudential          -> No ID              SHIELDS, KIERAN      Page 003

In the first appeal, you indicated the occupation required lifting floor to waist up to 15 pounds and above waist level 10 pounds occasionally. The position required sitting, standing and walking, carrying, pushing/pulling, twisting, bending, reaching, squatting, kneeling, crawling, wrist position deviation, pinching, fine motor activities and keyboard use, repetitive motion occasionally. The appeal noted the job also involves exposure to blood borne pathogens, chemical, airborne communicable disease, extreme temperature, radiation, uneven surfaces extreme noise levels and dust/particulates. The appeal agreed with Prudential the job is sedentary in nature.

You noted she has been treated by a pulmonologist for asthma and complications for over seven years. Complications have led to multiple hospitalizations. Her condition led to a decline in job performance. Her employer attempted unsuccessfully to accommodate her condition. She was hospitalized in April 2019 for her respiratory condition Her pulmonologist and primary care physician advised her to refrain from further work. The first appeal noted her disability is supported by her treaters, and Prudential relied on opinion of a Registered Nurse, who stated there is not diagnostic testing or result to correlate with respiratory failure or distress. You stated the records are clear her FEV decreased by 21% over four years, and her treater Mr. Hiser stated she had normal PFT despite 21% decline in FEV due to aggressive care and Xolair injections. You noted she had steroid injections for past seven years. She had follow up in February 2020 requiring narcotic cough medication to control cough She has been receiving extraordinary amount of steroid injections and tapers.

Her physician, Dr Wallace Hoke provided a letter of October 3, 2019 and Capacity Questionnaire dated November 4, 2019 noting her current medical condition is to the point she can no longer perform her work duties. Unable to work due to respiratory failure due to asthma, restrictions are lifelong. Dr. Hoke provided a Capacity Questionnaire dated January 23, 2020, stating she cannot stand walk sit climb stairs, ladders, balance, stop, kneel crawl reach at desk level or overhead, cannot lift up to 20 lbs. and only occasionally handle, finger, keyboard. Unable to work due to respiratory failure.

Treatment provider, Sam Hiser, APRN, provided an attending physician statement of October 8, 2019 reporting: asthma shortness of breath, wheezing, cough and anxiety were causing her to miss more work than she attended. In a November 22, 2019 statement it was noted: She can lift less than 10 lbs. frequently or occasionally, and stand/walk a total of one hour per eight-hour day. May be bedridden at times Her forced expiratory volume declined 21% in the last four years due to asthma. Melissa Bruno was also allowed to work from home.

As part of the first appellate review, and to assess Ms Bruno's functional capacity, her claim file was referred for an independent review by a physician Board Certified in Internal Medicine and Pulmonology (hereinafter the "physician reviewer")

The physician reviewer concluded Melissa Bruno would have a total restriction during the period of her hospital stay for exacerbation of asthma from October 24, 2019 through October 31, 2019. Otherwise she would have certain medically necessary restrictions and / or limitations from September 17, 2019 forward. However, the physician reviewer did not agree with the severity of the reported impairment or the assessments by providers Dr. Wallace Hoke and Sam Hiser, APRN.

A January 6, 2020 office visit note Dr. Hoke notes she has intrinsic asthma; last PFTs revealed a 21% decrease in her FEV1 over the last four years. She takes prednisone occasionally for flareups. Pulmonary: effort is normal; no respiratory distress; normal breath sounds; no stridor; no wheezing.

The January 6, 2020 medical source statement from Dr Hoke states that with chronic asthma and

Case 3:21-cv-00109-BRW    Document 2    Filed 06/07/21    Page 84 of 87
To: 18702771143   From: +17325423012   Date: 04/29/21   Time: 1:31 PM Page: 04

04/29/21   09:33:08   Prudential          -> No ID          SHIELDS, KIERAN      Page 004

acute exacerbations she would have significant limitations in activity to the point of being bedridden on worst days. She is capable of frequently lifting/carrying less than 10 lbs., occasionally lifting/carrying less than 10 lbs., stand/walk for up to 1 hour/day, sitting for up to 2 hours/day. Also, she has knee pain x 6 months. Unable to climb, kneel, crouch; can occasionally balance and stoop. Unlimited in reaching, handling, fingering, and feeling. She has worsening asthma due to seasonal allergies. Her FEV1 has declined 21% in the last four years due to asthma. Assessment is from 2010-ongoing.

Dr Hoke's January 23, 2020 Capacity Questionnaire from, opined she is unable to work due to respiratory failure due to asthma, indefinitely. She cannot stand, walk, sit, climb stairs/ladders, balance, stoop, kneel, crawl, or reach. She can occasionally handle/mouse, fingering, keyboarding, lift/carry up to 10 lbs.

Sam Hiser PRN, provided a January 30, 2020 letter that states she is unable to complete assigned tasks. She has constant coughing, wheezing, weakness, fatigue; medication use would not allow her to complete her job duties.

However, the physician reviewer opined he respectfully disagreed with total restriction, as her exams are essentially benign, aside from exacerbations, noting n peripheral capillary oxygen saturation (spO2) of 99%; normal effort; no respiratory distress; normal breath sounds; no stridor; no wheezing. Also her November 11, 2019 PFT by Dr. Walker only noted a forced vital capacity (FVC) that is mildly reduced, normal FEV1, mid flows are normal, there is improvement in the spirometry following bronchodilator therapy, the flow volume loop is normal Interpretation: evidence of reversible airway disease. Therefore, as Melissa Bruno does have complaints of shortness of breath and wheezing with PFTs identifying evidence of reversible airway disease, she would require moderate restrictions and limitations in regard to asthma. However, the reported severity is not supported, as FVC is only mildly reduced with a normal FEV1, normal mid flows, and normal flow volume loop. Moreover, she is noted to only have occasional wheeze and cough per the July 6, 2020 note by Dr. Walker

The physician reviewer concluded that from October 24, 2019 through October 31, 2019 total restriction is indicated during her hospital stay for exacerbation of asthma Apart from that period of hospitalization, during the period from September 17, 2019 forward, pending re-evaluation on or around March 19, 2021, the following restrictions and limitations would apply:

Sitting: unrestricted
Standing: 30 minutes at a time for up to 2 hours/day
Walking: 15 minutes at a time for up to 1 hour/day
Lifting/Carrying: occasionally up to 10 lbs.
Pushing/Pulling: occasionally up to 20 lbs.
Climbing stairs, Balancing, Stooping, Kneeling, Bending, Twisting, Squatting, Crouching occasionally
Crawling: never
Reaching: overhead - frequently
Reaching desk level - constantly
Below waist activities - frequently
Use lower extremities for foot controls: unrestricted
Fine manipulation, Fine motor activities and keyboard use, repetitive motion: unrestricted
Pinch, Simple and firm grasping: unrestricted
Avoid exposure to chemical, airborne communicable disease, extreme temperature, radiation, and dust/particulates.
Wrist position deviation: unrestricted
No restriction in regard to uneven surfaces
No restriction in regard to extreme noise levels

Case 3:21-cv-00109-BRW   Document 2   Filed 06/07/21   Page 85 of 87
To: 18702771143   From: +17325423012   Date: 04/29/21   Time: 1:31 PM   Page: 05

04/29/21   09:33:38   Prudential          → No ID          SHIELDS, KIERAN      Page 005

Based on the first appeal review of the file, we found your client would have been totally restricted during her week long October 2019 hospitalization. Otherwise from her September 7, 2019 reported date of disability forward, she would be able to continue functioning in her sedentary capacity. While there is only mild reduction in FVC on her November 11, 2019 PFTs, this is indicative of a reversible airway disease. In addition, her condition appears to be controlled on medications, as her pulmonary function and pulse oximetry have remained normal. However, she continues to report shortness of breath with occasional wheezing and coughing and notes asthma flares are two to five days a week due to weather changes, pollen, temperature changes, etc. Therefore, the medical evidence did support moderate restrictions and limitations with regard to asthma as outlined above. However, we determined these supported restrictions would not preclude her from performing the material and substantial duties of her regular occupation. As a result, we upheld our decision to deny her claim for LTD benefits. A complete explanation of that decision can be found in our letter dated February 14, 2020.

## Current Appeal Review

We have received the second request to appeal our decision to deny the claim for LTD benefits. In the appeal, you indicate you are submitting additional records evidencing treatment received for your client's various conditions outlined in the first appeal letter. The second appeal states your client's condition has declined during the intervening time. The appeal also notes she had has had multiple bilateral knee injection procedures, and treatment for elbow pain. She has had ongoing treatment for pulmonology issues and insomnia resulting from her other physical conditions. You noted she is often unable to go into the office for prescription used to treat lung condition, due to Covid

## Medical Review Summary

We have thoroughly evaluated the medical information on file, as well as the documentation received with the second appeal. We have reviewed the medical records in file from Meredith M Walker, MD, Bing X. Behrens, MD Samuel R. Hiser, APRN; Wallace S. Hoke, MD; Nathan W. Turney, MD: Holly Morris, RRT; Terina Reeks, RRT; Baptist Memorial Hospital, Brock F. Harris, MD, Rhonda J. Carter, RT; Ronald Holt, RRT; William S Hubbard, MD; Heidi R. Umphrey, MD., Jenny Cook, LPN; Jacqueline E. Hess, MD; Nathan W. Turney, MD / Family Medicine: O. Keith Criner, MD; David S. Parish, MD; and Charles Dunn, MD:

In order to assess Ms. Bruno's functional capacity, her claim file was again referred for an independent review by the physician Board Certified in Internal Medicine and Pulmonology who reviewed her records as part of the first appellate review

The physician reviewer concluded the review of the additional information submitted with the second appeal did not alter the prior assessment regarding whether the records support that Melissa Bruno has any medically necessary restrictions and/or limitations from any one condition or combination of conditions from September 17, 2019 forward, or for any closed periods.

The physician reviewer noted the medical records reflect that Melissa Bruno is a 47-year-old with a history of significant for severe asthma. The September 18, 2020 office visit note by Bing Behrens, MD stated Melissa Bruno had a video visit in regard to insomnia and obstructive sleep apnea (OSA). She is using the APAP, which helps her OSA. The December 1, 2020 office visit note by Wallace Hoke, MD notes Mellissa Bruno presents for evaluation of dyspnea. spO2: 99%. Resp: normal breathing sounds. 12/7/20 OVN by Charles Dunn, MD exam documents pulmonary effort is normal; no respiratory distress; normal breathing sounds; no wheezing. Your April 1, 2021 letter states your client's condition has declined during the intervening time, and she is often unable to come into the office personally for her Xolair prescription used for her lung condition

Case 3:21-cv-00109-BRW    Document 2    Filed 06/07/21    Page 86 of 87
TO: 18702771143    From: 17325423012    Date: 04/29/21    Time: 1:31 PM    Page: 06

04/29/21  09:34:13  Prudential          -> No ID              SHIELDS, KIERAN      Page 006

The physician reviewer opined that as the clinical exam findings are unremarkable, there is no clinical evidence of a decline in function. Therefore, the physician reviewer's prior assessment remains unaltered.

## Regular Occupation

As defined in the policy, Prudential will look at Melissa Bruno's occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location. Your client is a Quality Improvement Clinical Liaison. Information in her file indicates that her job requires being responsible for assisting with the transformation and quality improvement of practices/providers. Primary focus is to monitor provider performance metrics and work with the practices on opportunities to engage, improve, and adhere to practice transformation models. The position manages approximately 12 employees in multiple locations, manages multiple large projects across 12 locations, supervises day to day operations, and hires/fires/coaches. Based on information in her file, we have determined that her regular occupation is consistent with the occupation Manager, Office - DOT Code: 169.167-034. That occupation coordinates activities of clerical personnel in an establishment or organization. This occupation requires a Sedentary level of physical demands with Lift/Carry/Push/Pull: 10-pounds occasionally; Sitting: Frequently to Constantly; Standing/Walking: Occasionally; Reaching, Handling, Fingering and Keyboard Use: Frequently.

A prior review by a vocational consultant found the regular occupation is performed at Sedentary physical demand level after review of all claim information. The occupation of Office Manager is performed in a typical office environment that would not expose your client to chemicals, airborne communicable diseases, extreme temperatures, radiation or dust/particles. The occupation requires lifting and/or moving 10-pounds occasionally, frequent to constant sitting and occasional standing/walking. Melissa Bruno's statement indicated frequent stand/walk and the job description reported 15-pound occasional lifting was required. Exertional force requirements greater than 10-pounds occasionally and/or standing/walking requirements greater than occasionally would be considered job specific and not material physical demands of the occupation as normally performed in the national economy.

## Appeal Determination

We have completed our review of the second request for reconsideration of the claim. We have reviewed the information in file and submitted for the purposes of this appellate review. We have considered the opinions expressed by the treatment providers and we have considered your client's own self-report of functioning. We have had the claim file reviewed by a physician Board Certified in Board Certified in Internal Medicine and Pulmonology who provided their opinions as to your functional capacity.

Based on the review of the file, we again find Melissa Bruno would have been totally restricted during the week long October 2019 hospitalization. Otherwise, from the September 7, 2019 reported date of disability forward, she would be able to continue functioning in her sedentary capacity. Her treatment providers have indicated she is unable to work due to her pulmonary condition. Other noted issues such as knee pain have not been reported as impairing her from her sedentary level occupation nor were they reported or treated (based on the medical records in file) until around mid-2020. This is about 8 months after Melissa Bruno stopped working.

Melissa Bruno's pulmonary condition appears to be controlled on medications, as her pulmonary function and pulse oximetry have remained normal. She has continued to report shortness of breath with occasional wheezing and coughing and reports asthma flares of two to five days a week due to weather changes, pollen, temperature changes, etc. Therefore, the medical evidence supports moderate restrictions and limitations with regard to asthma.

We have determined these supported restrictions would not preclude her from performing the material and substantial duties of her sedentary regular occupation. The second appeal states the additional records provided show treatment for the various conditions outlined in the first appeal letter and that your client's condition has declined during the intervening time. Any reported worsening of her condition since the first appeal, would not alter the conclusion that she was not precluded from her regular occupation in the period prior to that first appeal determination. The updated records provided with the second appeal indicate the clinical exam findings are unremarkable, and we have found there is no clinical evidence of a decline in function. Therefore, our determination that she was not continuously precluded from performing the duties of her regular occupation, with the exception of the week long October 2019 hospitalization, remains unchanged. As a result, we have upheld our decision to deny her claim for LTD benefits.

This decision is final and cannot be appealed further to Prudential.

If you have questions about our decision on your claim, you may call the number listed above. If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,
**Kieran Shields**
Kieran Shields
Appeals Specialist

Attachments:

Language Assistance
Long Term Disability Policy Provisions